UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

L & L PAINTING CO., INC.,

ECF CASE

                        Plaintiff,

08 CIV 3559 (SAS)

          -against-

**AFFIDAVIT IN SUPPORT
OF MOTION TO REMAND**

ODYSSEY CONTRACTING CORP.,

                        Defendant.
------------------------------------------------------------------x

STATE OF NEW YORK    )
                        ) ss.:
COUNTY OF NEW YORK  )

       CHARLES FASTENBERG, being duly sworn, deposes and says:

       1.     I am an attorney duly admitted to practice in the State of New York and before

this Court and am counsel at the firm of Thelen Reid Brown Raysman & Steiner LLP, counsel

for Plaintiff L&L Painting Co., Inc. ("L&L") in this action against Defendant Odyssey

Contracting Corp. ("Odyssey"). I have personal knowledge of the matters herein set forth based

upon my participation as counsel in this action, and based upon the papers and pleadings filed in

the action and my office files pertaining thereto.

       2.     I respectfully submit this Affidavit in support of the motion by L&L for remand

of this action to New York State Supreme Court, New York County, following Odyssey's

removal of the action to this Court on April 14, 2008.

       3.     In accordance with the Court's Rules, by letter dated and delivered April 23, 2008,

this office notified Odyssey's counsel of its intention to file the instant motion for remand, and of

the bases for the motion, if the issues herein raised cannot be resolved without judicial

intervention. By its responsive letter dated April 25, 2008, Odyssey's counsel indicated that

such issues cannot be amicably resolved and that it continues to oppose remand or transfer of this

action to New York Supreme Court.

## BACKGROUND

4.      Plaintiff L&L is the contractor, and Defendant Odyssey its former subcontractor,

on a public improvement project for the City of New York (the "City") known and identified as

The Repainting of the Queensboro Bridge, Boroughs of Manhattan and Queens, New York City

Department of Transportation Contract No. BRC-231P (the "Project").

5.      L&L entered into a Prime Contract with the City in connection with the Project in

or about 2003 for a base price in excess of $160,000,000 (the "Prime Contract"). (A copy of the

relevant portions of Prime Contract, entitled "City of New York Standard Construction

Contract," and including Articles 1, 2, 5, 13.10, 27, 56, and 65 thereof are collectively annexed

as Exhibit "A" herewith.)

6.      Thereafter, on or about March 3, 2004, L&L entered into a subcontract with

Odyssey whereby Odyssey agreed to perform certain work as specified for a base price in excess

of $35,000,000 (the "Subcontract"). (A copy of the relevant portions of the Subcontract and

including Articles 1, 6, 7, 19, and 26 thereof are collectively annexed as Exhibit "B" herewith.)[1]

7.      On April 9, 2008, L&L commenced this action against Odyssey in New York

State Supreme Court, New York County, by filing a Summons With Notice asserting that

Odyssey had breached the Subcontract and claiming damages of not less than $3,000,000. (A

---

[1] On or about March 2, 2004, a letter was executed by officers of the parties, stating that "for
accounting purposes," the Subcontract would be divided into four subcontracts. (*See* letter dated
March 2, 2004, copy annexed as Exhibit "C" herewith.) The resulting four subcontract
documents are considered by L&L to be a single contract.

NY #1708102 v3

copy of the Summons With Notice, along with an affidavit of service on Odyssey on April 10, 2008, is annexed as Exhibit "D" herewith.)

8.     The breach complained of by L&L consists of Odyssey's termination and abandonment of its subcontract work on April 1, 2008 while such work was still in progress, as well as other breaches by Odyssey during the course of the work.  (Copies of Odyssey's termination letter dated April 1, 2008 and L&L's response dated April 8, 2008 are collectively annexed as Exhibit "E" herewith.)

9.     In pertinent part, the Summons With Notice recites:

> " . . . this action seeks damages for breach of contract arising from a public improvement project known as the Repainting of the Queensboro Bridge, Boroughs of Manhattan and Queens, New York City Department Of Transportation Contract No. BRC231P (the 'Project'), the said breach consisting, among other things, of defendant-subcontractor's wrongful termination and/or abandonment of work at the Project and  breach and repudiation of its subcontract with plaintiff-contractor on or about April 1, 2008, as well as breaches by defendant of its subcontract other than the termination on or about April 1, 2008 as stated above."

10.     Shortly after filing the Summons With Notice in Supreme Court, on April 9, 2008, my office notified Odyssey's counsel of the filing and provided counsel with a courtesy copy thereof.

11.     The next day, April 10, 2008, Odyssey commenced a separate action in this Court against L&L and its payment bond surety, Federal Insurance Company ("Federal Insurance"), by the filing of a Summons and Complaint bearing Index No. 08 CV 3491.  Odyssey's Complaint alleges breach of the parties' Subcontract, and seeks payments in excess of $6,000,000 allegedly due for work performed, as well as further damages in excess of $12,000,000 for alleged extra costs in performing its work.  By its Complaint, Odyssey also alleges that it is a citizen of Pennsylvania and that this Court has diversity jurisdiction over the action pursuant to 28 U.S.C.A.

NY #1708102 v3

§ 1332; L&L is a New York corporation.[2] (A copy of the Summons and Complaint filed by Odyssey on April 10, 2008 is annexed as Exhibit "F" herewith.)

12.    Odyssey's Complaint (at ¶ "18") concedes that it terminated its subcontract work on April 1, 2008, but alleges that the termination was "based on" L&L's "failure to make payments to Odyssey and other breaches."

13.    Four days later, on April 14, 2008, Odyssey filed the subject Notice of Removal with respect to the action commenced by L&L in state court. Odyssey's Notice of Removal alleges that this Court has diversity jurisdiction with respect to the removed action. (A copy of Odyssey's Notice of Removal filed on April 14, 2008, as furnished by counsel, is annexed as Exhibit "G" herewith.)

14.    For the reasons stated below and in the accompanying Memorandum of Law, this action should be remanded to New York Supreme Court.

## DISCUSSION

### A.    Article 26(b) of the Subcontract

15.    Remand is proper pursuant to Article 26 (b) of the Subcontract, according to which Odyssey specifically and explicitly waived its right to remove to this Court any action, such as the instant one, commenced against it by L&L in New York State Supreme Court. (*See* Article 26(b) at Exhibit "B" hereto.)

16.    In pertinent part, Article 26 (b) provides that in the event L&L commences an action against Odyssey in New York State Supreme Court, Odyssey waives its removal rights, as follows:

---

[2] By stipulation of the parties, so ordered by the Court on May 5, 2008, the action commenced on April 10, 2008 is adjourned pending a determination of the instant motion.

4

"With respect to any action between the Contractor and the Subcontractor in New York State Court, that is not subject to the Prime Contract, the Subcontractor hereby *expressly waives and relinquishes any rights it might otherwise have ... to remove to Federal Court ...."* (Emphasis added.)

17.     With respect to actions commenced by L&L against Odyssey in New York State Supreme Court, Article 26 (b) further provides that Odyssey waives any rights it might have "to move to dismiss on grounds of forum non conveniens"; and "to move for a change of venue to a New York State Court outside New York County."

18.     As more fully supported in the accompanying Memorandum of Law submitted on L&L's behalf, Article 26(b) constitutes an effective waiver by Odyssey of its right to remove the instant action commenced by L&L in State Court, and is dispositive.

## B.     "Not Subject to the Prime Contract"

19.     While it is true that Article 26(b) covers actions that are "not subject to the Prime Contract ... ," this language does not give rise to any genuine question concerning the effectiveness of the waiver herein since this action plainly is "not subject to the Prime Contract."

20.     The phrase "not subject to the Prime Contract" in Article 26(b) refers  to claims and actions that are *not* subject to the mandatory dispute resolution procedure set forth in Article 27 of the Prime Contract as well as in section 4-09 of the New York City Procurement Policy Board Rules ("PPB").  (*See* Exhibit "A" above; a copy of section 4-09 of the PPB Rules is separately annexed as Exhibit "H" herewith.)  Under Article 27.1 of the Prime Contract, the mandatory dispute resolution procedure is the "exclusive means" of "finally ... [resolving]" claims that are covered by the procedure.

21.     The claims covered by the mandatory dispute resolution procedure are claims against the City for alleged extra and additional work, or work directed to be performed which is claimed to be outside the existing scope of work under the claimant's contract.  (*See* Exhibit "A,"

5

Prime Contract at Article 27.1.2; Exhibit "H", PPB Rules at section 4-09 (a)(2).) Such claims are required to be resolved through administrative review by certain designated City agencies, followed by an Article 78 proceeding in New York Supreme Court. (*See* Prime Contract at Article 27.7.6). L&L may assert such claims against the City for its own account and/or for the account of subcontractors, such as Odyssey; and, pursuant to Article 19 of the Subcontract, Odyssey's sole remedy for such extra work claims is to "pass through" the claims to L&L for presentation to the City, the results of which presentation are binding on Odyssey (*see* Exhibit "B" above).[3]

22.    It is these "pass through" claims by Odyssey to L&L for presentation to the City pursuant to the mandatory dispute resolution procedure that are "subject to the Prime Contract" – i.e., that are outside the coverage of Article 26(b) and the waiver of removal clause. Thus, these "pass through" claims are to be resolved administratively through review by designated City agencies and are outside the coverage of Article 26(b), which concerns venue and forum issues relating to plenary actions in trial courts.

23.    As is clear, the within action itself is "not subject to the Prime Contract" since such action asserts only claims by L&L against the subcontractor Odyssey, and *not against the City*, and does not, in any event, implicate the dispute procedure set forth in the Prime Contract or the PPB Rules. This action arises under the Subcontract, is for breach of that Subcontract, and is a plenary action "subject to" the Subcontract and the Article 26(b) waiver of removal rights therein.

24.    In any event, even if this action were assumed *arguendo* to be "subject to the Prime Contract," it nevertheless would be incapable of being removed to this Court under the

---

[3] *See* discussion at the accompanying Memorandum of Law, subpart "B" of Point I.

NY #1708102 v3

express terms of the Prime Contract itself. In particular, the Prime Contract, at Article 65.2.2,

contains virtually the same waiver of removal clause that is contained in Article 26(b) of the

Subcontract:

> "65.2.2 With respect to any action between the City and the Contractor in
> New York State Court, the Contractor hereby expressly waives and
> relinquishes any right it might otherwise have:
> 65.2.2.(a) To move to dismiss on grounds of forum non conveniens;
> 65.2.2.(b) To remove to Federal Court; and
> 65.2.2.(c) To move for a change of venue to a New York State Court
> outside New York County."

25.    This action is "not subject to the Prime Contract," and, therefore, is controlled by

the waiver of removal clause in Article 26(b) of the Subcontract. Even under the Prime Contract,

removal of the action is waived under Article 65.2.2 thereof. There is no basis for removal, and

the Court should order the action to be remanded.

WHEREFORE L&L requests an order of the Court remanding this action to New York

State Supreme Court, New York County, and directing that all steps and actions necessary to

effectuate such remand be taken, and granting such other and further relief as the Court deems

just and proper including, without limit, the costs and fees of this motion and attorney's fees.


                                        s/ Charles Fastenberg
                                        CHARLES FASTENBERG


Sworn to before me this
13th day of May, 2008

s/ Arthur C. Silverman
NOTARY PUBLIC

Arthur C. Silverman
Notary Public, State of New York
No. 02S14924804
Qualified in New York County
Commission Expires February 28, 2010


7

## EXHIBITS

**A.**    Relevant Portions of Prime Contract, including Articles 1, 2, 5, 13.10, 27, 56, and 65.

**B.**    Relevant Portions of the Subcontract and including Articles 1, 6, 7, 19, and 26.

**C.**    March 3, 2004, letter stating dividing Subcontract into four subcontracts.

**D.**    Summons With Notice and affidavit of service on Odyssey.

**E.**    Odyssey's termination letter dated April 1, 2008 and L&L's response dated April 3, 2008.

**F.**    Summons and Complaint filed by Odyssey on April 10, 2008.

**G.**    Odyssey's Notice of Removal filed on April 14, 2008.

**H.**    Section 4-09 of the PPB Rules.

NY #1708102 v3

# EXHIBIT A

✦ 00099

*1514, 112*

PART D:    <u>CITY OF NEW YORK STANDARD</u>
<u>CONSTRUCTION CONTRACT</u>

**·  00104**

## WITNESSETH:

The parties in consideration of the mutual agreements contained herein, agree as follows:

## CHAPTER I
## THE CONTRACT AND DEFINITIONS

### ARTICLE 1.  THE CONTRACT

1.1  Except for titles, subtitles, headings, running headlines, tables of content and indices (all of which are printed herein merely for convenience), the following, except for such portions thereof as may be specifically excluded, shall be deemed to be part of this Contract:

1.1.1  All provisions required by law to be inserted in this Contract, whether actually inserted or not;

1.1.2  The Contract Drawings and Specifications;

1.1.3  The General Conditions and Special Conditions, if any;

1.1.4  The Contract;

1.1.5  The Information for Bidders; Request for Proposals; Notice of Solicitation and Proposal For Bids; Bid or Proposal, and, if used, the Bid Booklet;

1.1.6  The Budget Director's Certificate; all Addenda issued prior to the receipt of the bids; the Notice of Award; Performance and Payment Bonds, if required; and the Notice to Proceed with the Work.

1.2  Should any conflict occur in or between the Drawings and Specifications, the Contractor shall be deemed to have estimated the most expensive way of doing the Work, unless the Contractor shall have asked for and obtained a decision in writing from the Commissioner, of the Agency that is entering into this Contract, before the submission of its bid as to what shall govern.

### ARTICLE 2.  DEFINITIONS

2.1  The following words and expressions, or pronouns used in their stead, shall, wherever they appear in this Contract, be construed as follows, unless a different meaning is clear from the context:

2.1.1  "**Addendum**" or "**Addenda**" shall mean the additional Contract provisions issued in writing by the Commissioner prior to the receipt of bids.

2.1.2  "**Agency**" shall mean a city, county, borough or other office, position, department, division, bureau, board or commission, or a corporation, institution or agency of government, the expenses of which are paid in whole or in part from the City treasury.

2.1.3  "**Agency Chief Contracting Officer**" (**ACCO**) shall mean a person delegated authority by the Commissioner to organize and supervise the procurement activity of subordinate Agency staff in conjunction with the CCPO.

2.1.4  "**City**" shall mean the City of New York.

---

t  00105

2.1.5  "**City Chief Procurement Officer**" (CCPO) shall mean a person delegated authority by the Mayor to coordinate and oversee the procurement activity of Mayoral agency staff, including the ACCO and any offices which have oversight responsibility for the procurement of construction.

2.1.6  "**Commissioner**" shall mean the head of the Agency that has entered into this Contract, or his/her duly authorized representative.

2.1.7  "**Comptroller**" shall mean the Comptroller of the City of New York.

2.1.8  "**Contract**" or "**Contract Documents**" shall mean each of the various parts of the contract referred to in Article 1 hereof, both as a whole and severally.

2.1.9  "**Contract Drawings**" shall mean only those drawings specifically entitled as such and listed in the Specifications or in any Addendum, or any drawings furnished by the Commissioner, pertaining or supplemental thereto.

2.1.10  "**Contract Work**" shall mean everything required to be furnished and done by the Contractor by any one or more of the parts of the Contract referred to in Article 1, except Extra Work as hereinafter defined.

2.1.11  "**Contractor**" shall mean the entity which executed this Contract, whether a corporation, firm, partnership, joint venture, individual, or any combination thereof, and it(s), their, his/ her successors, personal representatives, executors, administrators and assigns, and any person, firm, partnership, joint venture, individual, or corporation which shall at any time be substituted in the place of the Contractor under this Contract.

2.1.12  "**Days**" shall mean calendar days, except where otherwise specified.

2.1.13  "**Engineer**" or "**Architect**" or "**Project Manager**" shall mean the person so designated in writing by the Commissioner to act as such in relation to this Contract, including a private Architect or Engineer or Project Manager, as the case may be.

2.1.14  "**Engineering Audit Officer**" (EAO) shall mean the person so designated by the Commissioner to perform responsible auditing functions hereunder.

2.1.15  "**Extra Work**" shall mean Work other than that required by the Contract at the time of award which is authorized by the Commissioner pursuant to Chapter VI of this Contract.

2.1.16  "**Federal-Aid Contract**" shall mean a contract in which the United States (federal) Government provides financial funding as so designated in the Information for Bidders.

2.1.17  "**Final Acceptance**" shall mean final written acceptance of all the Work by the Commissioner, a copy of which shall be sent to the Contractor.

2.1.18  "**Final Approved Punch List**" shall mean a list, approved in writing by the Engineer, specifying those items of Work to be completed by the Contractor after Substantial Completion and dates for the completion of each item of Work.

↳ 00106

2.1.19  **"Law"** or **"Laws"** shall mean the Constitution of the State of New York, the New York City Charter, the New York City Administrative Code, a Statute of the United States or of the State of New York, a local law of the City of New York, any ordinance, rule or regulation having the force of law, or common law.

2.1.20  **"Materialman"** shall mean any corporation, firm, partnership, joint venture, or individual, other than employees of the Contractor, who or which contracts with the Contractor or any Subcontractor, to fabricate or deliver, or who actually fabricates or delivers, plant, materials or equipment to be incorporated in the Work.

2.1.21  **"Means and Methods of Construction"** shall mean the labor, materials, temporary structures, tools, plant, and construction equipment, and the manner and time of their use, necessary to accomplish the result intended by this Contract.

2.1.22  **"Other Contractor(s)"** shall mean any Contractor (other than the entity which executed this Contract or its Subcontractors) who has a contract with the City for work on or adjacent to the building or site of the Work.

2.1.23  **"Payroll Taxes"** shall mean State Unemployment Insurance ("SUI"), Federal Unemployment Insurance (FUI") and payments pursuant to the Federal Insurance Contributions Act ("FICA").

2.1.24  **"Project"** shall mean the public improvement to which this Contract relates.

2.1.25  **"Procurement Policy Board" (PPB)** shall mean the Agency of the City of New York whose function is to establish comprehensive and consistent procurement policies and rules which shall have broad application throughout the City.

2.1.26  **"Required Quantity"** in a unit price Contract shall mean the actual quantity of any item of Work or materials which is required to be performed or furnished in order to comply with the Contract.

2.1.27  **"Resident Engineer"** shall mean the representative of the Commissioner duly designated by the Commissioner to be his/her representative at the site of the Work.

2.1.28  **"Site"** shall mean the area upon or in which the Contractor's operations are carried on, and such other areas adjacent thereto as may be designated as such by the Engineer.

2.1.29  **"Specifications"** shall mean all of the directions, requirements and standards of performance applying to the Work as hereinafter detailed and designated under the Specifications.

2.1.30  **"Subcontractor"** shall mean any person, firm or corporation, other than employees of the Contractor, who or which contracts with the Contractor or with its Subcontractors to furnish, or actually furnishes labor, or labor and materials, or labor and equipment, at the site. Wherever the word Subcontractor appears, it shall also mean Sub-Subcontractor.

2.1.31  **"Substantial Completion"** shall mean the written determination by the Commissioner that the Work required under this Contract is substantially, but not entirely, complete.

⸎ 00107

2.1.32 **"Treasurer"** shall mean the Commissioner of the Department of Finance of the City of New York.

2.1.33 **"Work"** shall mean all services required to complete the Project in accordance with the Contract Documents, including without limitation, labor, material, superintendence, management, administration, equipment, and incidentals, and shall include both Contract Work and Extra Work.

## CHAPTER II
## THE WORK AND ITS PERFORMANCE

## ARTICLE 3.  CHARACTER OF THE WORK

3.1  Unless otherwise expressly provided in the **Contract Drawings, Specifications and Addenda**, the **Work** shall be performed in accordance with the best modern practice, utilizing, unless otherwise specified in writing, new and unused materials of standard first grade quality and workmanship and design of the highest quality, to the satisfaction of the **Commissioner**.

## ARTICLE 4.  MEANS AND METHODS OF CONSTRUCTION

4.1  Unless otherwise expressly provided in the **Contract Drawings, Specifications and Addenda**, the **Means and Methods of Construction** shall be such as the **Contractor** may choose; subject, however, to the **Engineer's** right to reject the **Means and Methods of Construction** proposed by the **Contractor** which in the opinion of the **Engineer**:

4.1.1  Will constitute or create a hazard to the **Work**, or to persons or property; or

4.1.2  Will not produce finished **Work** in accordance with the terms of the **Contract**; or

4.1.3  Will be detrimental to the overall progress of the **Project**.

4.2  The **Engineer's** approval of the **Contractor's Means and Methods of Construction**, or his/her failure to exercise his/her right to reject such means or methods, shall not relieve the **Contractor** of its obligation to complete the **Work** as provided in this **Contract**; nor shall the exercise of such right to reject create a cause of action for damages.

## ARTICLE 5.  COMPLIANCE WITH LAWS

5.1  The **Contractor** shall comply with all **Laws** applicable to this **Contract** and to the **Work** to be done hereunder.

5.2  Procurement Policy Board Rules:  This **Contract** is subject to the Rules of the PPB ("PPB Rules") in effect at the time of the bid opening for this **Contract**.  In the event of a conflict between the PPB Rules and a provision of this **Contract**, the PPB Rules shall take precedence.

5.3  Noise control code provisions:  In accordance with the provisions of Section 24-216(b) of the Administrative Code of the City ("Administrative Code"), Noise Abatement Contract Compliance:

⊮ 00108

5.3.1  Devices and activities which will be operated, conducted, constructed or manufactured pursuant to this **Contract** and which are subject to the provisions of the **City** Noise Control Code shall be operated, conducted, constructed, or manufactured without causing a violation of the Administrative Code.

5.3.2  Such devices and activities shall incorporate advances in the art of noise control development for the kind and level of noise emitted or produced by such devices and activities, in accordance with regulations issued by the **Commissioner** of the Department of Environmental Protection. Regulations promulgated pursuant to Section 24-216(b) of the Administrative Code after the bid openings for this **Contract** shall not alter its terms, conditions and **Specifications**.

## ARTICLE 6.  INSPECTION

6.1  During the progress of the **Work** and up to the date of **Final Acceptance**, the Contractor shall at all times afford the representatives of the **City** every reasonable, safe and proper facility for inspecting all **Work** done or being done at the **Site** and also for inspecting the manufacture or preparation of materials and equipment at the place of such manufacture or preparation.

6.2  The **Contractor's** obligation hereunder shall include the uncovering or taking down of finished **Work** and its restoration thereafter; provided, however, that the order to uncover, take down and restore shall be in writing, and further provided that if **Work** thus exposed proves satisfactory, and if the **Contractor** has complied with Article 6.1, such uncovering or taking down and restoration shall be considered an item of **Extra Work** to be paid for in accordance with the provisions of Article 26.  If the **Work** thus exposed proves unsatisfactory, the **City** has no obligation to compensate the **Contractor** for the uncovering, taking down or restoration.

6.3  Inspection and approval by the **Commissioner**, the **Engineer**, **Project Manager**, or **Resident Engineer**, of finished **Work** or of **Work** being performed, or of materials and equipment at the place of manufacture or preparation, shall not relieve the **Contractor** of its obligation to perform the **Work** in strict accordance with the **Contract**.  Finished or unfinished **Work** not found to be in strict accordance with the **Contract** shall be replaced as directed by the **Engineer**, even though such **Work** may have been previously approved and paid for.  Such corrective work is **Contract Work** and shall not be deemed **Extra Work**.

6.4  Rejected **Work** and materials shall be promptly taken down and removed from the **Site**, which must at all times be kept in a reasonably clean and neat condition.

## ARTICLE 7.  PROTECTION OF WORK AND OF PERSONS AND PROPERTY

7.1  During the performance of the **Work** and up to the date of **Final Acceptance**, the Contractor shall be under an absolute obligation to protect the finished and unfinished **Work** against any damage, loss, injury, theft and/or vandalism and in the event of such damage, loss, injury, theft and/or vandalism, it shall promptly replace or repair such **Work**, whichever the **Resident Engineer** shall determine to be preferable.  The obligation to deliver finished **Work** in strict accordance with the **Contract** prior to **Final Acceptance** shall be absolute and shall not be affected by the **Resident Engineer's** approval of, or failure to prohibit, the **Means and Methods of Construction** used by the **Contractor**.

7.2  During the performance of the **Work** and up to the date of **Final Acceptance**, the Contractor shall take all reasonable precautions to protect the persons and property of the **City** and of others from damage, loss or injury resulting from the **Contractor's**, and/or its **Subcontractors'** operations under this **Contract**.  The **Contractor's** obligation to protect shall include the duty to provide, place or replace and adequately maintain at or about the **Site** suitable and sufficient protection such as lights, barricades, and enclosures.

13.9.4  Neither the granting of any application for an extension of time to the Contractor or any other **Contractor** on this **Project** nor the papers, records or reports related to any application for or grant of an extension of time or determination related thereto shall be referred to or offered in evidence by the **Contractor** or its attorneys in any action or proceeding.

13.10  No Damage for Delay:  The **Contractor** agrees to make no claim for damages for delay in the performance of this **Contract** occasioned by any act or omission to act of the **City** or any of its representatives, and agrees that all it may be entitled to on account of any such delay is an extension of time to complete performance of the **Work** as provided herein.

## ARTICLE 14.  COMPLETION AND FINAL ACCEPTANCE OF THE WORK

14.1  Date for **Substantial Completion**:  The **Contractor** shall substantially complete the **Work** within the time fixed in Schedule A of the General Conditions, or within the time to which such **Substantial Completion** may be extended.

14.2  Determining the Date of **Substantial Completion**:  The **Work** will be deemed to be substantially complete when the two conditions set forth in Articles 14.2.1 and 14.2.2 have been met.  The **Commissioner** will then issue a Certificate of **Substantial Completion**.

14.2.1  Inspection:  The **Engineer** has inspected the **Work** and has made a written determination that it is substantially complete.

14.2.2  Approval of Final Punch List and Date for **Final Acceptance**:  Following inspection of the **Work**, the **Engineer** shall furnish the **Contractor** a final punch list, specifying all items of **Work** to be completed.  The **Contractor** shall then submit to the **Engineer** dates for the completion of each specified item of **Work**.  Within a reasonable time after receipt, the **Engineer**, in a written notification to the **Contractor**, shall approve the **Contractor's** completion dates or, if they are unable to agree, shall establish dates for the completion of each item of **Work**.  The latest completion date specified shall be the date for **Final Acceptance** of the **Work**.

14.3  Determining the Date of **Final Acceptance**:  The **Work** will be accepted as final and complete as of the date of the **Engineer's** inspection if, upon such inspection, the **Engineer** finds that all items on the **Final Approved Punch List** are complete and no further **Work** remains to be done.  The **Commissioner** will then issue a written determination of **Final Acceptance**.

14.4  Request for Inspection:  Inspection of the **Work** by the **Engineer** for the purpose of **Substantial Completion** or **Final Acceptance** shall be made within ten (10) **Days** after receipt of the **Contractor's** written request therefor.

14.5  Request for Re-inspection:  If upon inspection for the purpose of **Substantial Completion** or **Final Acceptance**, the **Engineer** determines that there are items of **Work** still to be performed, the **Contractor** shall promptly perform them and then request a re-inspection.  If upon re-inspection, the **Engineer** determines that the **Work** is substantially complete or finally accepted, the date of such re-inspection shall be the date of **Substantial Completion** or **Final Acceptance**.  Re-inspection by the **Engineer** shall be made within ten (10) **Days** after receipt of the **Contractor's** written request therefor.

14.6  Initiation of Inspection by the **Engineer**:  If the Contractor does not request inspection or re-inspection of the **Work** for the purpose of **Substantial Completion** or **Final Acceptance**, the **Engineer** may initiate such inspection or re-inspection.

**ℝ 00129**

26.2.9  Ten (10%) percent of the total of items in Articles 26.2.1 through 26.2.5, plus item 26.2.8, as compensation for profit, except that no percentage for profit will be allowed on **Payroll Taxes** or on the premium portion of overtime pay or on sales and personal property taxes; plus

26.2.10  Five (5%) percent of the total of items in Article 26.2.6 and 26.2.7 as compensation for overhead and profit.

26.3  Where the **Extra Work** is performed in whole or in part by other than the **Contractor's** own forces, the **Contractor** shall be paid, subject to audit by the **Engineering Audit Officer**, the cost of such **Work** computed in accordance with Article 26.2 above, plus an additional allowance of five (5%) percent to cover the **Contractor's** overhead and profit.

26.4  Where a change is ordered, involving both **Extra Work** and omitted or reduced **Contract Work**, the **Contract** price shall be adjusted, subject to audit by the **EAO**, in an amount based on the difference between the cost of such **Extra Work** and of the omitted or reduced **Work**. The cost of such **Extra Work** and of such omitted or reduced **Work** shall be computed based upon applicable **Contract** unit prices. Where there are no applicable **Contract** unit prices, the cost of such **Extra Work** and of such omitted or reduced **Contract Work** shall be computed in accordance with the items 26.2.1 through 26.2.7. If the cost of such **Extra Work** exceeds the costs of such omitted or reduced **Contract Work**, the **Contract** price shall be increased by the difference, plus percentages for overhead and profit as provided in Articles 26.8.8 through 26.2.10. If the cost of the omitted or reduced **Contract Work** exceeds the cost of the **Extra Work**, then the **Contract** price shall be reduced by the difference.

26.5  Where the **Contractor** and the **Commissioner** can agree upon another method of payment for **Extra Work** in accordance with Article 25.3.4, or for **Extra Work** ordered in connection with omitted work, such method, subject to audit by the **EAO**, may, at the option of the **Commissioner**, be substituted for the cost plus a percentage method; provided in Article 26.2; provided, however, that if the **Extra Work** is performed by a **Subcontractor**, the **Contractor** shall not be entitled to receive more than an additional allowance of five (5%) percent for overhead and profit over the cost of such **Subcontractor's Work** as computed in accordance with Article 26.2.

## ARTICLE 27.  RESOLUTION OF DISPUTES

27.1  All disputes between the **City** and the **Contractor** of the kind delineated in this article that arise under, or by virtue of, this **Contract** shall be finally resolved in accordance with the provisions of this article and the PPB Rules. The procedure for resolving all disputes of the kind delineated herein shall be the exclusive means of resolving any such disputes.

27.1.1  This article shall not apply to disputes concerning matters dealt with in other sections of the PPB Rules, or to disputes involving patents, copyrights, trademarks, or trade secrets (as interpreted by the courts of New York State) relating to proprietary rights in computer software.

27.1.2  This article shall apply only to disputes about the scope of work delineated by the **Contract**, the interpretation of **Contract** documents, the amount to be paid for **Extra Work** or disputed work performed in connection with the **Contract**, the conformity of the **Contractor's Work** to the **Contract**, and the acceptability and quality of the **Contractor's Work**; such disputes arise when the **Engineer** makes a determination with which the **Contractor** disagrees.

27.2  All determinations required by this article shall be made in writing clearly stated, with a reasoned explanation for the determination based on the information and evidence presented to the party making the determination. Failure to make such determination within the time required by this article shall be deemed a non-determination without prejudice that will allow application to the next level.

00130

27.3  During such time as any dispute is being presented, heard, and considered pursuant to this article, the **Contract** terms shall remain in force and the **Contractor** shall continue to perform **Work** as directed by the **ACCO** or the **Engineer**. Failure of the **Contractor** to continue **Work** as directed shall constitute a waiver by the **Contractor** of its claim.

27.4  Presentation of Disputes to **Commissioner**.

Notice of Dispute and Agency Response.  The **Contractor** shall present its dispute in writing ("Notice of Dispute") to the **Commissioner** within thirty (30) **Days** of receiving written notice of the determination or action that is the subject of the dispute.  This notice requirement shall not be read to replace any other notice requirements contained in the **Contract**. The Notice of Dispute shall include all the facts, evidence, documents, or other basis upon which the **Contractor** relies in support of its position, as well as a detailed computation demonstrating how any amount of money claimed by the **Contractor** in the dispute was arrived at.  Within thirty (30) **Days** after receipt of the detailed written submission comprising the complete Notice of Dispute, the **Engineer** shall submit to the **Commissioner** all materials he or she deems pertinent to the dispute.  Following initial submissions to the **Commissioner**, either party may demand of the other the production of any document or other material the demanding party believes may be relevant to the dispute.  The requested party shall produce all relevant materials that are not otherwise protected by a legal privilege recognized by the courts of New York State.  Any question of relevancy shall be determined by the **Commissioner** whose decision shall be final.  Willful failure of the **Contractor** to produce any requested material whose relevancy the **Contractor** has not disputed, or whose relevancy has been affirmatively determined, shall constitute a waiver by the **Contractor** of its claim.

27.4.1  **Commissioner** Inquiry. The **Commissioner** shall examine the material and may, in his or her discretion, convene an informal conference with the **Contractor**, the **ACCO**, and the **Engineer** to resolve the issue by mutual consent prior to reaching a determination. The **Commissioner** may seek such technical or other expertise as he or she shall deem appropriate, including the use of neutral mediators, and require any such additional material from either or both parties as he or she deems fit. The **Commissioner's** ability to render, and the effect of, a decision hereunder shall not be impaired by any negotiations in connection with the disputed presented, whether or not the **Commissioner** participated therein. The **Commissioner** may or, at the request of any party to the dispute, shall compel the participation of any other **Contractor** with a **Contract** related to the **Work** of this **Contract**, and that **Contractor** shall be bound by the decision of the **Commissioner**. Any **Contractor** thus brought into the dispute resolution proceeding shall have the same rights and obligations under this article as the **Contractor** initiating the dispute.

27.4.2  **Commissioner** Determination.  Within thirty (30) days after the receipt of all materials and information, or such longer time as may be agreed to by the parties, the **Commissioner** shall make his or her determination and shall deliver or send a copy of such determination to the **Contractor**, the **ACCO**, and **Engineer**, together with a statement concerning how the decision may be appealed.

27.4.3  Finality of **Commissioner** Decision. The **Commissioner's** decision shall be final and binding on all parties, unless presented to the Contract Dispute Resolution Board pursuant to this article. The **City** may not take a petition to the Contract Dispute Resolution Board. However, should the **Contractor** take such a petition, the **City** may seek, and the Contract Dispute Resolution Board may render, a determination less favorable to the **Contractor** and more favorable to the **City** than the decision of the **Commissioner**.

27.5  Presentation of Dispute to the **Comptroller**.  Before any dispute may be brought by the **Contractor** to the Contract Dispute Resolution Board, the **Contractor** must first present its claim to the **Comptroller** for his or her review, investigation, and possible adjustment.

⊢ 00131

27.5.1   Time, Form, and Content of Notice.   Within thirty (30) days of its receipt of a decision by the **Commissioner**, the **Contractor** shall submit to the **Comptroller** and to the **Commissioner** a Notice of Claim regarding its dispute with the **Agency**.  The Notice of Claim shall consist of (i) a brief Written statement of the substance of the dispute, the amount of money, if any, claimed and the reason(s) the **Contractor** contends the dispute was wrongly decided by the **Commissioner**; (ii) a copy of the written decision of the **Commissioner**; and (iii) a copy of all materials submitted by the **Contractor** to the **Agency**, including the Notice of Dispute.  The **Contractor** may not present to the **Comptroller** any material not presented to the **Commissioner**, except at the request of the **Comptroller**.

27.5.2   **Agency** Response.   Within thirty (30) days of receipt of the Notice of Claim, the **Agency** shall make available to the **Comptroller** a copy of all material submitted by the **Agency** to the **Commissioner** in connection with the dispute.  The **Agency** may not present to the **Comptroller** any material not presented to the **Commissioner** except at the request of the **Comptroller**.

27.5.3   **Comptroller** Investigation.   The **Comptroller** may investigate the claim in dispute and, in the course of such investigation, may exercise all powers provided in section 7-201 and 7-203 of the New York City Administrative Code.  In addition, the **Comptroller** may demand of either party, and such party shall provide, whatever additional material the **Comptroller** deems pertinent to the claim, including original business records of the **Contractor**.  Willful failure of the **Contractor** to produce within fifteen (15) days any material requested by the **Comptroller** shall constitute a waiver by the **Contractor** of its claim.  The **Comptroller** may also schedule an informal conference to be attended by the **Contractor**, **Agency** representatives, and any other personnel desired by the **Comptroller**.

27.5.4   Opportunity of **Comptroller** to Compromise or Adjust Claim.   The **Comptroller** shall have forty-five (45) days from his or her receipt of all materials referred to in Article 27.5.3 to investigate the disputed claim.  The period for investigation and compromise may be further extended by agreement between the **Contractor** and the **Comptroller**, to a maximum of ninety (90) days from the **Comptroller's** receipt of all materials.  The **Contractor** may not present its petition to the Contract Dispute Resolution Board until the period for investigation and compromise delineated in Article 27.5.4 has expired.  In compromising or adjusting any claim hereunder, the **Comptroller** may not revise or disregard the terms of the **Contract** between the parties.

27.6   Contract Dispute Resolution Board.   There shall be a Contract Dispute Resolution Board composed of:

27.6.1   The chief administrative law judge of the Office of Administrative Trials and Hearings (OATH) or his/her designated OATH administrative law judge, who shall act as chairperson, and may adopt operational procedures and issue such orders consistent with this article as may be necessary in the execution of the Contract Dispute Resolution Board's functions, including, but not limited to, granting extensions of time to present or respond to submissions;

27.6.2   The Director of the Office of Construction or his/her designee; any designee shall have the requisite background to consider and resolve the merits of the dispute and shall not have participated personally and substantially in the particular matter that is the subject of the dispute or report to anyone who so participated; and

⊢ 00132

27.6.3  A person with appropriate expertise who is not an employee of the City. This person shall be selected by the presiding administrative law judge from a prequalified panel of individuals, established and administered by OATH with appropriate background to act as decision-makers in a dispute. Such individual may not have a contract or dispute with the City or be an officer or employee of any company or organization that does, or regularly represents persons, companies, or organizations having dealings with the City.

27.7    Petition to the Contract Dispute Resolution Board. In the event the claim has not been settled or adjusted by the **Comptroller** within the period provided in this article, the **Contractor**, within thirty (30) days thereafter, may petition the Contract Dispute Resolution Board to review the **Commissioner's** determination.

27.7.1  Form and Content of Petition by **Contractor**. The **Contractor** shall present its dispute to the Contract Dispute Resolution Board in the form of a petition, which shall include (i) a brief written statement of the substance of the dispute, the amount of money, if any, claimed, and the reason(s) the Contractor contends the dispute was wrongly decided by the **Commissioner**; (ii) a copy of the written Decision of the **Commissioner**, (iii) copies of all materials submitted by the **Contractor** to the Agency; (iv) a copy of the written decision of the **Comptroller**, if any, and (v) copies of all correspondence with, or written material submitted by the **Contractor**, to the **Comptroller**. The **Contractor** shall concurrently submit four (4) complete sets of the Petition: one set to the Corporation Counsel (Attn: Commercial and Real Estate Litigation Division) and three (3) sets to the Contract Dispute Resolution Board at OATH's offices with proof of service on the Corporation Counsel. In addition, the **Contractor** shall submit a copy of the written statement of the substance of the dispute, cited in (i) above, to both the **Commissioner** and the **Comptroller**.

27.7.2  **Agency** Response. Within thirty (30) Days of its receipt of the petition by the Corporation Counsel, the **Agency** shall respond to the brief written statement of the **Contractor** and make available to the Contract Dispute Resolution Board all material it submitted to the **Commissioner** and **Comptroller**. Three (3) complete copies of the **Agency** response shall be provided to the Contract Dispute Resolution Board and one to the **Contractor**. Extensions of time for submittal of the **Agency** response shall be given as necessary upon a showing of good cause or, upon consent of the parties, for an initial period of up to thirty (30) Days.

27.7.3  Further Proceedings. The Contract Dispute Resolution Board shall permit the **Contractor** to present its case by submission of memoranda, briefs, and oral argument. The Contract Dispute Resolution Board shall also permit the **Agency** to present its case in response to the **Contractor** by submission of memoranda, briefs, and oral argument. If requested by the Corporation Counsel, the **Comptroller** shall provide reasonable assistance in the preparation of the **Agency's** case. Neither the **Contractor** nor the **Agency** may support its case with any documentation or other material that was not considered by the **Comptroller**, unless requested by the Contract Dispute Resolution Board. The Contract Dispute Resolution Board, in its discretion, may seek such technical or other expert advice as it shall deem appropriate and may seek, on its own or upon application of a party, any such additional material from any party as it deems fit. The Contract Dispute Resolution Board, in its discretion, may combine more than one dispute between the parties for concurrent resolution.

27.7.4  Contract Dispute Resolution Board Determination. Within forty-five (45) Days of the conclusion of all written submissions and oral arguments, the Contract Dispute Resolution Board shall render a written decision resolving the dispute. In an unusually complex case, the Contract Dispute Resolution Board may render its decision in a longer period, not to exceed ninety (90) Days, and shall so advise the parties at the commencement of this period. The Contract Dispute Resolution Board's decision must be consistent with the terms of the **Contract**. Decisions of the Contract Dispute Resolution Board shall only resolve matters before the Contract Dispute Resolution Board and shall not have precedential effect with respect to matters not before the Contract Dispute Resolution Board.

00133

27.7.5 Notification of Contract Dispute Resolution Board Decision. The Contract Dispute Resolution Board shall send a copy of its decision to the **Contractor**, the ACCO, the Engineer, the **Comptroller**, the Corporation Counsel, the Director of the Office of Construction, and the PPB. A decision in favor of the **Contractor** shall be subject to the prompt payment provisions of the PPB Rules. The Required Payment Date shall be thirty (30) Days after the date the parties are formally notified of the Contract Dispute Resolution Board's decision.

27.7.6 Finality of Contract Dispute Resolution Board Decision. The Contract Dispute Resolution Board's decision shall be final and binding on all parties. Any party may seek review of the Contract Dispute Resolution Board's decision solely in the form of a challenge, filed within four (4) months of the date of the Contract Dispute Resolution Board's decision, in a court of competent jurisdiction of the State of New York, County of New York pursuant to Article 78 of the Civil Practice Laws and Rules. Such review by the court shall be limited to the question of whether or not the Contract Dispute Resolution Board's decision was made in violation of lawful procedure, was affected by an error of **Law**, or was arbitrary and capricious or an abuse of discretion. No evidence or information shall be introduced or relied upon in such proceeding that was not presented to the Contract Dispute Resolution Board in accordance with this article.

27.8    Any termination, cancellation, or alleged breach of the **Contract** prior to or during the pendency of any proceedings pursuant to this article shall not affect or impair the ability of the **Commissioner** or Contract Dispute Resolution Board to make a binding and final decision pursuant to this article.

## ARTICLE 28. RECORD KEEPING FOR EXTRA OR DISPUTED WORK

28.1    While the **Contractor** or any of its **Subcontractors** is performing **Extra Work** on a Time and Material Basis ordered by the **Commissioner** under Article 25, or is performing disputed **Work**, or complying with a determination or order under protest in accordance with Articles 27 and 30, in each such case the **Contractor** shall furnish the **Resident Engineer** daily with three (3) copies of written statements signed by the **Contractor's** representative at the Site showing:

28.1.1 The name and number of each Worker employed on such **Work** or engaged in complying with such determination or order, the number of hours employed, and the character of the **Work** each is doing; and

28.1.2 The nature and quantity of any materials, plant and equipment furnished or used in connection with the performance of such **Work** or compliance with such determination or order, and from whom purchased or rented.

28.2    A copy of such statement will be countersigned by the **Resident Engineer**, noting thereon any items not agreed to or questioned, and will be returned to the **Contractor** within two (2) **Days** after submission.

28.3    The **Contractor** and its **Subcontractors**, when required by the **Commissioner**, or the **Comptroller**, shall also produce for inspection, at the office of the **Contractor** or **Subcontractor**, any and all of its books, bid documents, financial statements, vouchers, records, daily job diaries and reports, and cancelled checks, and any other documents relating to showing the nature and quantity of the labor, materials, plant and equipment actually used in the performance of such **Work**, or in complying with such determination or order, and the amounts expended therefor, and shall permit the **Commissioner** and the **Comptroller** to make such extracts therefrom, or copies thereof, as they or either of them may desire.

00152

## ARTICLE 56. CLAIMS AND ACTIONS THEREON

56.1  Any claim, that is not subject to dispute resolution under the PPB Rules or this Contract, against the City for damages for breach of Contract shall not be made or asserted in any lawsuit, unless the Contractor shall have strictly complied with all requirements relating to the giving of notice and of information with respect to such claims, as herein before provided.

56.2  Nor shall any lawsuit be instituted or maintained on any such claims unless such lawsuit is commenced within six (6) months after the date the Commissioner issues a Certificate of Substantial Completion pursuant to Article 44; except that:

56.2.1  Any claims arising out of events occurring after the date the Commissioner issues a Certificate of Substantial Completion and before Final Acceptance of the Work shall be asserted within six (6) months of Final Acceptance of the Work;

56.2.2  Any claims for monies deducted, retained or withheld under the provisions of this Contract shall be asserted within six (6) months after the date when such monies becomes due and payable hereunder; and

56.2.3  If the Commissioner exercises his/her right to terminate the Contract pursuant to Article 64, any such lawsuit shall be commenced within six (6) months of the date the Commissioner exercises said right.

## ARTICLE 57. INFRINGEMENT

57.1  The Contractor shall be solely responsible for and shall indemnify the City against any and all claims and judgments for damages for any infringement of copyright and patents or use of patented articles, tools, materials, equipment, appliances or processes in the performance or completion of the Work, including all costs and expenses which the City shall or may incur or be obligated to pay by reason thereof.

## ARTICLE 58. NO CLAIM AGAINST OFFICERS, AGENTS OR EMPLOYEES

58.1  No claim whatsoever shall be made by the Contractor against any officer, agent or employee of the City for, or on account of, anything done or omitted to be done in connection with this Contract.

## ARTICLE 59. SERVICES OF NOTICES

59.1  The Contractor hereby designates the business address specified in its bid, as the place where all notices, directions or other communications to the Contractor may be delivered, or to which they may be mailed. Actual delivery of any such notice, direction or communication to the aforesaid place, or depositing it in a postpaid wrapper addressed thereto in any post office box (P.O. Box) regularly maintained by the United States Postal Service, shall be conclusively deemed to be sufficient service thereof upon the Contractor as the date of such delivery or deposit.

59.2  Such address may be changed at any time by an instrument in writing, executed and acknowledged by the Contractor, and delivered to the Commissioner.

## ARTICLE 65. CHOICE OF LAW, CONSENT TO JURISDICTION AND VENUE

65.1  This **Contract** shall be deemed to be executed in the **City** of New York, State of New York, regardless of the domicile of the **Contractor**, and shall be governed by and construed in accordance with the **Laws** of the State of New York and the **Laws** of the United States, where applicable.

65.2  The parties agree that any and all claims asserted against the **City** arising under this **Contract** or related thereto shall be heard and determined in the courts of the State of New York ("New York State Courts") located in the **City** and County of New York. To effect this **Contract** and intent, the **Contractor** agrees:

65.2.1  If the **City** initiates any action against the **Contractor** in Federal Court or in New York State Court, service of process may be made on the **Contractor** either in person, wherever such **Contractor** may be found, or by registered mail addressed to the **Contractor** at its address as set forth in this **Contract**, or to such other address as the **Contractor** may provide to the **City** in writing; and

65.2.2  With respect to any action between the **City** and the **Contractor** in New York State Court, the **Contractor** hereby expressly waives and relinquishes any rights it might otherwise have:

65.2.2(a)  To move to dismiss on grounds of forum non conveniens;

65.2.2(b)  To remove to Federal Court; and

65.2.2(c)  To move for a change of venue to a New York State Court outside New York County.

65.2.3  With respect to any action brought by the **City** against the **Contractor** in Federal Court located in the **City**, the **Contractor** expressly waives and relinquishes any right it might otherwise have to move to transfer the action to a United States Court outside the **City**.

65.2.4  If the **Contractor** commences any action against the **City** in a Court located other than in the **City** and State of New York, upon request of the **City**, the **Contractor** shall either consent to a transfer of the action to a State Court of competent jurisdiction located in the **City** and State of New York or, if the Court where the action is initially brought will not or cannot transfer the action, the **Contractor** shall consent to dismiss such action without prejudice and may thereafter reinstate the action in a State Court of competent jurisdiction in the **City**.

65.3  If any provision(s) of this article is held unenforceable for any reason, each and all other provision(s) shall nevertheless remain in full force and effect.

## ARTICLE 66. PARTICIPATION IN AN INTERNATIONAL BOYCOTT

66.1 The **Contractor** agrees that neither the **Contractor** nor any substantially owned affiliated company is participating or shall participate in an international boycott in violation of the provisions of the **Export** Administration Act of 1979, as amended, or the regulations of the United States Department of Commerce promulgated thereunder.

66.2 Upon the final determination by the Commerce Department or any other **Agency** of the United States as to, or conviction of the **Contractor** or a substantially-owned affiliated company thereof, participation in an international boycott in violation of the provisions of the Export Administration Act of 1979, as amended, or the regulations promulgated thereunder, the **Comptroller** may, at his/her option, render forfeit and void this **Contract**.

# EXHIBIT B

FROM                              (WED)MAR 26 2008  8:42/ST. 8:41/No. 6803001232 P  2

# SUBCONTRACT

THIS AGREEMENT, made this 3rd day of March, 2004, by and between Odyssey Contracting Corp., hereinafter called the Subcontractor, Address: P.O. Box 97, Houston, PA 15342; and L&L Painting Co., Inc., hereinafter called the Contractor, Address: 900 South Oyster Bay Road, Hicksville, New York 11801.

## WITNESSETH:

WHEREAS, the Contractor has entered into a Contract dated the 18th day of September, 2003 with New York City Department of Transportation, hereinafter called the Owner, for the construction of Queensboro Bridge Protective Coating, hereinafter called the Project, at Boroughs of Queens and Manhattan; and

WHEREAS, copies of the Prime Contract are on file in the office of the Contractor and are available for examination by the Subcontractor; and

WHEREAS, the Subcontractor desires to perform a portion of such Prime Contract.

NOW, THEREFORE, it is agreed as follows:

Section 1.    CONTRACT DOCUMENTS.

(a)    The term "Prime Contract" as used herein refers to the Notice to Bidders, Information for Bidders, Contract Terms and Conditions including all Addendum, general, supplementary and special conditions, drawings, specifications, amendments, modifications and all other documents forming or by reference made a part of the contract between the Contractor and Owner.

(b)    The Contract Documents including all of the terms and conditions of the Prime Contract shall be deemed expressly incorporated by reference into this Subcontract. The intent of the parties is that, with respect to the Work, and subject to the terms hereof, Subcontractor shall be under the same obligations to Contractor and bound by the same terms, conditions, and procedures that govern Contractor's relationship with the Owner, including, but not limited to, Chapters 1 through 11 of the Prime Contract which set forth, *inter alia*, the Dispute Resolution Procedure, the Change Order Procedure, Insurance and Indemnity Obligations. Accordingly, the term "Subcontractor" shall be deemed substituted for "Contractor", and "Contractor" or "Contractor's" for

47744v1

"Owner", etc. in the Contract Documents between Contractor and Owner and any other corresponding changes made whenever the context may require. The absence of a specific reference to a portion of the Contract Documents in no way diminishes the parties' reciprocal rights and obligations thereunder, as set forth in Paragraphs (c) and (d) below.

(c)     Subcontractor shall be bound to Contractor by the terms of the Subcontract including all attachments hereto (collectively the Subcontract) and of the Contract Documents between the Owner and Contractor, and shall assume toward Contractor all the obligations and responsibilities which Contractor, by those Contract Documents, assumes toward the Owner, and shall have the benefit of all rights, remedies and redress against Contractor which Contractor, by those Contract Document, has against the Owner, insofar as applicable to this Subcontract, provided that where any provision of the Contract Documents between the Owner and Contractor is inconsistent with any provision of this Subcontract, those Contract Documents between Owner and Contractor shall govern except if otherwise provided in the Subcontract.

(d)     Contractor shall be bound to Subcontractor by the terms of this Subcontract and of the Contract Documents between the Owner and Contractor and shall assume toward Subcontractor all the obligations and responsibilities that the Owner, by those Contract Documents, assumes toward Contractor, and shall have the benefit of all rights, remedies and redress against Subcontractor which the Owner, by those Contract Documents, has against Contractor, insofar as applicable to this Subcontract, provided that where any provision of the Contract Documents between the Owner and Contractor is inconsistent with any provision in this Subcontract, those Contract Documents between Owner and Contractor shall govern.

(e)     This Subcontract is subject to Subcontractor approval by the Owner, to the extent required under the Prime Contract.

(f)     Subcontractor, by signing this Agreement, acknowledges that it has independently assured itself that all of the Prime Contract documents have been available to it and confirms that it has examined all such documents and agrees that all of the aforesaid Prime Contract documents shall be considered a part of this Subcontract by reference thereto and the Subcontractor agrees to be bound to the Contractor and Owner by the terms and provision thereof so far as they apply to the Work hereinafter described, unless otherwise provided herein.

(g)    It has been made very clear to Subcontractor that time is of the essence and Subcontractor is to proceed immediately with any and all shop drawing preparation and submittals, all sample submittals, and fabrication of materials to comply with the project schedule so as to achieve Substantial Completion on or before the date depicted in the project schedule for the Subcontracted work.

(h)    Subcontractor shall layout and establish all lines, dimensions and levels required for the proper installation of the Work using the established lines and benchmark elevation. Subject to latent conditions, Subcontractor shall compare existing conditions with working points and measurements at the site, and compare the construction drawings to ascertain that they are in agreement to the extent same interface with the Work. Any difference shall be brought to the immediate attention of Contractor.

Section 2.    THE WORK. The Subcontractor agrees to furnish all supervision, labor, tools, equipment, materials and supplies necessary to perform the following described work attached hereto as Exhibit 1 (hereinafter called the Work) in accordance with the terms and conditions of all Construction Documents including but not limited to the Prime Contract and this Subcontract and in accordance with the reasonable discretion of Contractor.

See attached Exhibit 1 which is made a part hereof.

Materials furnished but not installed by Subcontractor shall be delivered F.O.B. job site unless otherwise provided in other provisions of this Subcontract .

Section 3.    PAYMENT. Subcontractor shall submit an invoice to Contractor on a monthly basis for Work performed during the prior month. The Subcontractor's invoice shall be based on an itemized breakdown of the Work scope as approved by the Contractor. Invoicing will not be recognized until full compliance with invoice breakdown requirements are reasonably fulfilled. One copy of each of the following forms must be attached to the invoice.

Billing Breakdown Form A.I.A. G702-G703
Properly executed Partial or Final Waiver Form - (Supplied by Contractor)

(a)    The Contractor agrees to pay the Subcontractor for the performance of this Subcontract as specified herein, the sum of eight million eight hundred eighty two thousand five hundred ($8,882,500.00) from P.P. 77-47, adjusted as required by differences between estimated and actual quantities for unit price Work and subject to additions and deductions for changes agreed upon or determined, as hereinafter provided.

47744v1                    3

the Subcontractor shall promptly proceed with the performance of this Subcontract as so changed.

(b)    For changes in the Prime Contract that have been initiated by the Owner or Owners Representative and for acts or omissions of the Owner or Owners Representative and/or defects in the Prime Contract documents, the Subcontractor shall submit any claims it may have including notice thereof for adjustment in the price, schedule or other provisions of the Subcontract to the Contractor in writing in sufficient time and form to allow the Contractor to process such claims within the time and in the manner provided for an in accordance with the applicable provisions of the Prime Contract documents. Subcontract adjustments shall be made only to the extent and in the manner that the Contractor is entitled to relief from or must grant relief to the Owner.

(c)    For changes directed by the Contractor which were not initiated by the Owner or Owners Representative and do not arise out of acts, errors or omissions of the Owner or Owners Representative or defects in the Prime Contract documents. Subcontractor shall be entitled to equitable adjustment in the Subcontract price, provided Subcontractor gives Contractor written notice of its intent to claim such an adjustment prior to performing such changed Work. Any extra work that is performed directly for Contractor, may not include overhead and profit.  Failure to provide such notice shall be deemed to prejudice the Contractor and constitute a waiver of such claims by Subcontractor.

(d)    No time extension shall be granted to the Subcontractor by reason of the issuance of any change order unless it is expressly stated therein and approved by Owner.

Section 6.    PROSECUTION OF WORK.

(a)    The Subcontractor shall furnish all labor, supervision, tools, equipment, materials and supplies necessary for the performance of this Subcontract in a proper, efficient and workmanlike manner. The Subcontractor shall prosecute the Work undertaken in a prompt and diligent manner whenever such Work, or any part of it, becomes available, or at such other time or times as the Contractor may direct, and so as to promote the general progress of the entire construction, and shall not, by delay or otherwise, interfere with or hinder the Work of the Contractor or any other Subcontractor. Any materials that are to be furnished by the Subcontractor hereunder shall be furnished in sufficient time to enable the Subcontractor to perform and complete its Work within the time or times provided for herein. The time of performance of the Work by the Subcontractor is of the essence and the Subcontractor agrees to reimburse the Contractor for any and all liquidated or actual damages that may be assessed by the Owner against

and collected from the Contractor which are attributable to or caused by the Subcontractor's failure to perform the Work required by this Subcontract within the time fixed or in the manner provided for herein. Subcontractor also agrees to pay to the Contractor any increased costs or other damages the Contractor may sustain by reason of such delay by the Subcontractor whether or not liquidated or actual damages are assessed and collected by the Owner. The payment of such damages shall not release the Subcontractor from its obligation to otherwise fully perform this Subcontract. Upon written request by the Contractor, the Subcontractor shall furnish to the Contractor such evidence as the Contractor may require relating to the Subcontractor=s ability to fully perform this Subcontract in the manner and within the time specified herein.

(b)     Subcontractor shall submit Material Status reports on a monthly basis. This report shall show all purchase orders placed and scheduled to be placed including scheduled/actual dates of order placement and scheduled/actual dates of material and equipment deliveries. This report shall also include the name of the supplier for each purchase order and the associates detailed cost breakdown item number. Subcontractor shall provide Contractor a schedule for the Work and monthly update reports showing current progress of the work as well as a plan and schedule of the completion of their remaining work. Subcontractor shall familiarize itself with the Project schedule and other update requirements.

(c)     In the event the Subcontractor fails to comply or becomes disabled from complying with the provisions herein as to character or time of performance, including but not limited to payment for all materials furnished and Work and labor performed under this Subcontract, and the failure is not attended to within fifteen (15) days and corrected in thirty (30) days, after written request by the Contractor to the Subcontractor, the Contractor, by this Subcontract or otherwise, may without prejudice to any other right or remedy, terminate this Subcontract for default and take over and complete the performance of this Subcontract at the expense of the Subcontractor, or without terminating the Subcontract, take over the Work or any portion thereof and furnish such materials and/or employ such workers as may be necessary to remedy the situation at the expense of the Subcontractor.

(d)     The Subcontractor shall keep, on the Project site during the progress of the Work, a competent superintendent who shall be authorized representative of the Subcontractor. Directions and communications to the superintendent from the Contractor in connection with the Work shall be treated as directions and communications to the Subcontractor. Any items that are considered a non-compliance notice will be forwarded to the Subcontractor's main headquarters.

47744v1                                          8

(e)    It is recognized that if Subcontractor becomes insolvent, or institutes or has instituted against it bankruptcy proceedings, or makes a general assignment for the benefit of creditors, of if a receiver is appointed for the benefit of its creditors, or if a receiver is appointed on account of its insolvency, such event or events could impair or frustrate Subcontractor's performance of this Subcontract. Accordingly, it is agreed that upon the occurrence of any such event, Contractor shall be entitled to request of Subcontractor or its receiver or court-appointed successor adequate assurances of future performance. Pending receipt of adequate assurances of performance and actual performance in accordance therewith. Contractor shall be entitled to take over the Work pursuant to the provisions of Subsection 6(c) above without notice to Subcontractor.

(f)    If the Prime Contract is terminated for the convenience of the Owner, the termination settlement under this Subcontract shall be as provided in the Prime Contract. The Subcontractor shall not be entitled to receive any greater amount than the Contractor may on behalf of the Subcontractor recover from the Owner for such termination.

(g)    Upon a determination by a court of competent jurisdiction that termination of Subcontractor or its successor in interest pursuant to any provision of this Subcontract was wrongful, such termination will be deemed converted to a termination for convenience and the Subcontractor's remedies shall be limited to those set forth in Subsection 6(e).

Section 7.    DELAYS.

(a)    In the event the Subcontractor's performance of this Subcontract is delayed or interfered with by acts of the Owner, Contractor or other subcontractors, it may request an extension of the time for the performance of same, as hereinafter provided, but shall not be entitled to any increase in the Subcontract price or to damages or additional compensation as a consequence of such delays or interference, except to the extent that the Prime Contract entitled the Contractor to compensation for such delays and then only to the extent of any amount that the Contractor may, on behalf of the Subcontractor recover from the Owner for such delays.

(b)    No allowance for an extension of time, for any cause whatever, shall be claimed by, or made to, the Subcontractor unless the Subcontractor shall have made written request upon the Contractor for such extension within five (5) days after the cause of such extension occurred, or, if the Prime Contract provides for a shorter period, within

sufficient time to permit the Contractor to give notice to the Owner or Owner's Representative within the time allowed by the Prime Contract for such notice.

(c)    No allowance for an extension of time shall, in any event, be made to the Subcontractor for delay by the Subcontractor in preparing drawings or in securing approval of the Owner or Owner's Representative thereto when such drawings are not properly prepared or when the Subcontractor, by the exercise of reasonable diligence and judgment, could have anticipated and avoided the delay.

Section 8.    LABOR. The Subcontractor, in connection with all Work covered by this Subcontract, shall comply with and be bound by any labor agreements executed by the Contractor or on Contractor's behalf. Failure at any time to comply with any of the provisions of such agreements will, at the option of the Contractor, provided failure is not attended to within fifteen days (15) and corrected in thirty (30) days after written request by the Contractor to the Subcontractor, be cause for immediate termination of this Subcontract for default and the Contractor shall have all of the rights contained in Section 6 with regard to such termination. If, by reason of strikes, picketing or disputes of any nature between the Subcontractor and any individual, group or organization, the Subcontractor should be persistently, repeatedly, or for a period of five (5) consecutive days, unable to supply enough properly skilled workers or proper materials to execute the Work defined in this Subcontract, the Contractor may terminate the Subcontract for default and proceed in accordance with Section 6 hereof.

Section 9.    APPROVALS. All drawings of the Subcontractor shall be submitted through the Contractor for approval of the Owner or Owner's Representative and all other communications between the Subcontractor and the Owner or Owner's Representative with respect to the Work shall be transmitted through the Contractor.

Section 10.    INSURANCE. Prior to commencement of Work, Subcontractor shall procure and at all times thereafter maintain with insurers acceptable to Contractor the following minimum insurance protecting the Subcontractor, Owner and the Contractor against liability from damages because of injuries including death, suffered by persons, including employees of the Subcontractor, and liability from damages to property arising from and growing out of the Subcontractor=s operations, including its subcontractors' and suppliers' operations, in connection with the performance of this Subcontract. If the terms of the Prime Contract require larger limits or additional coverage or both, Contractor reserves the right to require Subcontractor to provide, at Subcontractor's expense such larger limits or additional coverage or both.

Limits

47744v1                                    10

shall be limited to such injuries or damage occurring on account of, or in connection with, the performance of the Work, whether or not the occurrence giving rise to such injury or such damage happens at the Project Site or whether or not sustained by persons or to property while at the Project Site, but shall exclude injuries to such persons or damage to such property to the extent caused by the negligence of the Contractor or the Subcontractor.

(b)     The Subcontractor=s liability hereunder includes any injury (including death) or damage to property related to the performance of, including the failure to perform, miscellaneous and incidental Work.

(c)     The Subcontractor expressly acknowledges that it has reviewed the Contract Documents and if the Work be done without fault or negligence on the part of the Subcontractor, such Work will not cause any damage to the foundations, walls or other parts of adjacent, abutting or overhead buildings, railroads, bridges, structures or surfaces. PROTECTION OF WORK. The Subcontractor specifically agrees that it is responsible for the protection of its Work until final completion and acceptance thereof by the Owner and that the Subcontractor will make good or replace, at no expense to the Contractor or the Owner, any damage to its Work which occurs prior to said final acceptance.

Section 19.     DISPUTES.

(a)     In case of any disputes between Subcontractor and the Contractor, Subcontractor agrees to be bound to Contractor to the same extent that Contractor is bound to Owner both by the terms of the Prime Contract and by any and all decisions or determinations made thereunder by the party or board as authorized in the Prime Contract. It is agreed that in the event the Prime Contract contains a provision, hereinafter called "disputes" clause, whereby claims may be resolved under an administrative procedure or by arbitration, then as to any claims of Subcontractor for or on account of acts or omissions of the Owner or Owner's Representative which are not disposed of by agreement, the Contractor agrees to present to the Owner, in Contractor's name, all of Subcontractor's claims for additional monetary compensation or time extension; and to further invoke, on behalf, in advance of and even in the Prime Contract for determining disputes. Contractor shall have the option to present such claims on Subcontractor's behalf, in advance of and even without Subcontractor's written request, Subcontractor shall have full responsibility for preparation and presentation of such claims and shall car all expenses thereof, including attorneys' fees. Subcontractor agrees to be bound by the procedure and final determinations as specified in any such Disputes clause, and agrees that it will not take, or will suspend, any other action or actions with respect to any such

claims and will pursue no independent litigation with respect thereto, pending final determination under such Disputes clause. Subcontractor shall not be entitled to receive any greater amount from Contractor than Contractor is entitled to and actually does receive from the Owner on account of Subcontract's Work, less any markups or costs incurred by the Contractor and to which Contractor is otherwise entitled, and Subcontractor agrees that it will accept such amount, if any, received by Contractor from Owner as full satisfaction and discharge of all claims for or on account of acts or omissions of the Owner or Owner's Representative(s). Should the Owner determine that the work is not an extra, and awards no payment for such, or awards a partial payment for said claim, the Subcontractor agrees to accept said determination and partial payment as payment in full. Contractor, however, at its sole and exclusive discretion, may appeal from any ruling or may institute a suit for damages for extra work or contest any deduction or refusal to pay by the Owner for any reason which involves the work of the Subcontractor as permitted by the Prime Contract. In that event, the Subcontractor shall pay the cost of appeal or suit, and shall render every assistance, without cost to Contractor, in the prosecution of said appeal or suit. The Subcontractor shall otherwise be bound by the determination of the Owner; or in the event of an appeal or suit, by determination in said appeal or suit or by any settlement made by Contractor in good faith, at any time during the pendency of said appeal or suit. In the case of any recovery, the Subcontractor shall be entitled to those amounts allocated to its work, less overhead and profit to Contractor and all expenses and attorneys fees and disbursements incurred by Contractor in prosecuting such appeal or suit. The Subcontractor agrees that no claim, invoice or payment requisition shall include any modifications to the Price, without an executed Change Order, pursuant to which such work is eligible for payment.

      (b)    Subcontractor shall be bound by document's determination, made in good faith, as to apportionment of any amounts received from Owner for claimants, including Contractor and other subcontractors, whose work is affected by any act or omission of the Owner or Owner's Representative.

      (c)    Should a dispute as to proper interpretation of this Subcontract, or Work or material performed or furnished hereunder arise which concerns the parties hereto only, or Subcontractor and other subcontractors or suppliers, but not the Owner or Owner's Representative, the same shall be decided by Contractor whose decision thereon shall be final and conclusive.

      (d)    The Subcontractor shall proceed diligently with the Work, pending final determination pursuant to any Disputes clause or pursuant to any other action taken with respect to a claim or claims.

47744v1                                    18

accrue after delivery. Furnished material lost or damaged after delivery, from any cause whatsoever, shall be replaced by or at the expense of the Subcontractor. Subcontractor shall, within forty-eight (48) hours after delivery of furnished materials, inspect the same and immediately report, in writing, to the Contractor any shortages, damages or defects therein which are reasonably observable by proper inspection. Failure to inspect and report as specified shall be treated as unqualified acceptance by Subcontractor of the material involved.

Section 24.   EQUAL OPPORTUNITY.  If the Prime Contract contains any provision which prohibits discrimination on the basis of race, color, religion, sex, or national origin, or if any law, regulation or order has any application thereto and is applicable to this Subcontract, then Subcontractor hereby agrees to comply with such provision, law, regulation or order. In the event that any such provision, law, regulation or order requires the physical attachment of specific wording to this Subcontract, then such attachments shall be furnished by the Contractor and shall be considered a part of this Subcontract by reference thereto or shall be physically attached thereto as called for by the Contractor.

Section 25.   OWNER=S REPRESENTATIVE.  The words "Owner's Representative" as used herein include Owner's design engineer, architect or any person or entity appointed by the Owner (including the Engineer, Architect, Project Manager and/or Commissioner as noted in the Prime Contract) to supervise the Work of the Contractor on behalf of the Owner.

Section 26.   ASSIGNMENT.  The Subcontractor shall obtain the written consent of the Contractor prior to assigning or subletting any of the Work, in whole or in part. Subcontractor may assign the proceeds of the Work after providing adequate assurances to Contractor that all its labor-suppliers and other creditors for the Work will be paid and upon obtaining the consent of Subcontractor=s surety and the acknowledgment of the assignee on forms provided by the Contractor.

Subject to any and all provisions of the Prime Contract's terms and conditions substituting "Subcontractor" for "Contractor" and "Contractor for Owner" or Authority, this Subcontract shall be governed by the laws of the State of New York without regard to choice of law or conflicts of law, and all disputes not subject to the Prime Contract, if any, shall be subject to the jurisdiction of the Supreme Court of New York, County of New York.

(a)   If the Contractor initiates any action against the Subcontractor in Federal Court or in New York State Court, service of process may be made on the

47744v1                              20

Subcontractor either in person, wherever such Subcontractor may be found, or by registered mail addressed to the Subcontractor at its address as set forth in this Subcontract, or to such other address as the Subcontractor may provide to the Contractor in writing.

(b)    With respect to any action between the Contractor and the Subcontractor in New York State Court, that is not subject to the Prime Contract, the Subcontractor hereby expressly waives and relinquishes any rights it might otherwise have (i) to move to dismiss on grounds of forum non conveniens, (ii) to remove to Federal Court; and (ii) to move for a change or venue to a New York State Court outside New York County.

(c)    With respect to any action between the Contractor or the Subcontractor in Federal Court, that is not subject to the Prime Contract, the action should be venued in the Southern District of New York, New York City Courthouse. The Contractor expressly waives and relinquishes any right it might otherwise have to move to transfer the action to a United States Court outside the Southern District, New York City Courthouse.

(d)    If the underlying dispute is not subject to the Prime Contract and the Subcontractor commences any action against the Contractor in a court located other than in the State of New York, County of New York upon request of the Contractor, the Subcontractor shall either consent to a transfer of the action to a court of competent jurisdiction located in the State of New York, County of New York as above described or, if the court where the action is initially brought will not or cannot transfer the action the Subcontractor shall consent to dismiss such action without prejudice and may thereafter reinstitute the action in a court of competent jurisdiction in New York County as above stated.

Section 27.    PRIOR UNDERSTANDINGS OR REPRESENTATIONS. The Contractor assumes no responsibility for any understandings or representations made by any of is officers or agents prior to the execution of this Subcontract, unless such understandings or representations by the Contractor are expressly stated in this Subcontract.

Section 28.    SEVERABILITY AND WAIVER. The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity or continuing force and effect of any other provision. The failure of either party to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Subcontract, or to exercise any right herein, shall not be construed as a

47744v1                                    21

with this notice provision and shall be considered as delivered on the third business day after the date of mailing if sent certified mail or when received in all other cases, including telecopy or other printed electronic medium or personal deliver.

    Section 33.   INTEGRITY AND ETHICAL CONDUCT. Contractor and Subcontractor acknowledge and understand that each is committed to have the Work performed in accordance with the highest ethical standards applicable to, or governing, the conduct of construction practices. In furtherance thereof, Contractor and Subcontractor hereby agree to comply with and observe all applicable Federal, State and local laws, rules, regulations, requirements, trade standards and ethical guidelines governing said conduct, including those provided by Owner.

    Section 34.   ADDITIONAL PROVISIONS. (Attach additional pages if necessary.)

    See attached Additional Provisions which are made a part hereof.

    IN WITNESS WHEREOF, the parties hereto have executed this Subcontract by their proper officers or duly authorized agents.

By: _____      By: _____
      Contractor                  Subcontractor

47744v1                        23

# EXHIBIT C



# L & L PAINTING CO., INC.

900 SOUTH OYSTER BAY ROAD • HICKSVILLE, NEW YORK 11801
TEL: 516-349-1900 • FAX: 516-349-0011

To:     Odyssey Contracting Corp.                                3/2/04
        P.O. Box 97
        Houston, PA 15342

Att:    Stavros Semandares
Re:     Queensboro Bridge Protective Coating
        Blasting and Painting Subcontracts

Dear Mr. Semandares,

This letter will confirm that Odyssey Contracting Corp., ("Odyssey") has agreed to perform blasting and painting work for the base value of $35,530,000.00 and a 100% bonded value of $37,400,000.00 on the subject project for L&L Painting Co., Inc. ("L&L") who has a contract with the Department of Transportation of the City of New York. This work has been divided into four contracts each with a base value of $8,882,500.00 and a fully bonded value of $9,350,000.00.

Odyssey acknowledges that although the work has been segregated into four contracts for accounting purposes, L&L has agreed to award and Odyssey has accepted the responsibility and contractual obligations to complete all four contracts. Therefore Odyssey agrees that in the event that it fails to perform any portion of the work contemplated by any of the four contracts, L&L will suffer significant damages including but not limited to the increased cost to complete that portion of the $35,530,000.00 work contemplated by these contracts which Odyssey has failed to complete, Odyssey agrees to be responsible for such damages.

Please acknowledge your acceptance of this letter agreement by signing below.

Sincerely yours,

Alvin Levine   FOR A.S.L.

Agreed to and accepted by:                      Date:

3/03/04                                          3/03/04

# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x
L & L PAINTING CO., INC.,

                              Plaintiff,

           -against-

ODYSSEY CONTRACTING CORP.,

                          Defendant.
------------------------------------------------------------------x

Index No. 105726/2008

Date Purchased: 4/9/08

**SUMMONS WITH NOTICE**

**To The Above Named Defendant:**

    **YOU ARE HEREBY SUMMONED** to appear in this action and are required to serve a

notice of appearance and/or a demand for the complaint on plaintiff's attorney within twenty days

after the service of this summons, exclusive of the day of service, if this summons is personally

delivered to you within the State of New York, or within thirty days after service is complete, if this

summons is not personally delivered to you within the State of New York. Your time to appear may

be extended as provided in subdivision (b) of CPLR 3012.

    **TAKE NOTICE THAT** this action seeks damages for breach of contract arising from a

public improvement project known as the Repainting of the Queensboro Bridge, Boroughs of

Manhattan and Queens, New York City Department Of Transportation Contract No. BRC231P (the

"Project"), the said breach consisting, among other things, of defendant-subcontractor's wrongful

termination and/or abandonment of work at the Project and breach and repudiation of its subcontract

with plaintiff-contractor on or about April 1, 2008, as well as breaches by defendant of its

subcontract other than the termination on or about April 1, 2008 as stated above.

NYN #707849 v2                             1

The relief sought is a judgment in favor of plaintiff in an amount not yet determined and to be determined at trial, but presently estimated as not less than $3,000,000.00, together with interest and all other just and proper relief including without limit the costs and fees of the action.

Plaintiff designates New York County as the place of trial. The basis of the venue designated is contractual; defendant's residence.

Dated: New York, New York
        April 9, 2008

> **THELEN REID BROWN**
> **RAYSMAN & STEINER LLP**
> Attorneys for Plaintiff
> L & L Painting Co., Inc.
>
> By: _____
>        Jose A. Aquino
>
>        900 Third Avenue
>        New York, New York 10022
>        (212) 895-2000

**DEFENDANT'S ADDRESS:**

ODYSSEY CONTRACTING CORP.
C/O C T Corporation System
1633 Broadway
New York, New York 10019



**SUPREME COURT OF THE STATE OF NEW YORK /NEW YORK COUNTY**

_____ **Index No.105126/2008**

**L&L PAINTING CO., INC.,**
                                        _Plaintiff,_

        _-against-_

**ODYSSEY CONSTRACTING CORP.,**
                                        _Defendant._

_____

State Of New York, County of New York SS:
**ROBIN RAMSON**
Being duly sworn, deposes and says that she is over the age of 18 years, is not a party to this action and resides in New York.

That on the **10ᵀᴴ** day of **APRIL 2008**, At: **3:30 PM**

At: **C/O CT CORPORATION, 111 8ᵀᴴ AVENUE, NEW YORK, NEW YORK 10011**

Deponent served the Annexed: **SUMMONS WITH NOTICE**

Upon: **ODYSSEY CONTRACTING CORP.**

### PERSONAL SERVICE ON A CORPORATION
A corporation, by delivering thereat a true copy to **AORADIN DYLA (SUPERVISOR)** personally; deponent knew the said individual to be _**Authorized To Accept Service**_ thereof.

### DESCRIPTION - Deponent describes the individual served or spoken to as follows:
Sex: **FEMALE** Color: **BROWN** Hair: **BLACK** App. Age: **34** App. Ht: **5'5"** App. Wt. **140**
Other identifying features:

Sworn to before me this **10ᵀᴴ**
day of **APRIL 2008**

Jolantyna Cagney

**JOLANTYNA CAGNEY**
NOTARY PUBLIC, State of New York
No. 01CA6111489
Qualified in New York County
Commission Expires June 14, 2008

**ROBIN RAMSON 956-346**

# EXHIBIT E

04/01/2008 13:59 FAX                                                                    ☑001/001

 **Odyssey Contracting Corp.**

P.O. Box 97 • Houston, PA 15342

PHONE (724) 745-1022    FAX (724) 745-3220

April 1, 2008

L & L Painting Corp.
900 South Oyster Bay Road
Hicksville, New York 11801

    Attn:  Ross Levine

        Re:    Project: Queensboro Bridge Protective Coating
                Contract # BRC231P, B.I.N. 2-24004-7, 8
                PIN: 84199MBBR589

Dear Mr. Levine:

      Please be advised that Odyssey Contracting Corp. hereby terminates its four subcontracts with L & L Painting Corp. on the above-referenced project due to L & L Painting Corp.'s breach by, inter alia, failing to make full and timely payments to Odyssey Contracting Corp. for work performed.  Notwithstanding the fact that the termination of the four subcontracts is effective immediately, Odyssey Contracting Corp. will remove its equipment and materials from the site after completion of the punch-list work on subcontracts I, IIA, IIB and III.

      A letter will follow from Odyssey Contracting Corp.'s attorneys setting forth the amounts due on each of the four subcontracts.

      Of course, please feel free to contact me if you have any questions.

                          Sincerely,

                          Stavros Semanderes
                          President

cc:   Michael Levine, L&L Painting
       Georgoulis & Associates PLLC

INDUSTRIAL PAINTING SPECIALISTS ┆ PRODUCTION ┆ QUALITY ┆ RESPONSIBILITY · SAFETY ┆



## L & L PAINTING CO., INC.

900 SOUTH OYSTER BAY ROAD • P.O. BOX 9016 • HICKSVILLE, NEW YORK 11802-9016
TEL: 516-349-1900 • FAX: 516-349-0011

To:    **Odyssey Contracting Corp.**                    4/8/08
Attn:  Stavros Semandares
Re:    City of New York
       Dept of Transportation
       Contract BR231P

Gentlemen,

Your letter dated April 1, 2008 terminating your work at the Queensboro Bridge, and your refusal to retract that letter at our meeting yesterday, constitutes a clear abandonment of the work, and a material breach of your contractual obligations. We therefore direct you by the close of business today to discontinue all operations and remove from the jobsite all personnel under your employ, or working on your behalf.

Simultaneous with this letter, we are notifying the New York City Department of Transportation that no one associated with Odyssey is authorized to perform any work or be on site for any reason as of the close of business today. If there is any breach of this directive, we shall take all steps necessary to remove unauthorized persons or activities at the site.

As we have explained to you, the alleged bases for your termination of work, as set forth in your counsel's letter dated April 2, 2008, are without merit. L&L shall hold Odyssey accountable for all damages, costs, and losses resulting from its termination of work and all other wrongful acts and omissions.

Sincerely,

Ross Levine

CC: T. Maracic, A. Ross, C. Fastenberg, J. Aquino

**EXHIBIT F**

JUDGE SCHEINDLIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ODYSSEY CONTRACTING CORP.,

08 - CV    3491

Plaintiff,

- against -

L & L PAINTING COMPANY, INC. and
FEDERAL INSURANCE COMPANY,

Defendants.
------------------------------------------------------------x



COMPLAINT

APR 10 2008

U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, Odyssey Contracting Corp. ("Odyssey"), by its attorneys,

GEORGOULIS & ASSOCIATES PLLC, as and for it complaint herein, alleges as

follows:

## PARTIES

1.     Plaintiff Odyssey is a foreign corporation duly organized and existing

under the laws of the State of Pennsylvania with its principal place of business located at

2435 W. Pike Street, Houston, Pennsylvania.

2.     Defendant L & L Painting Company, Inc. ("L & L Painting") is a

corporation duly organized and existing under the laws of the State of New York with its

principal place of business located at 900 South Oyster Bay Road, Hicksville, New York

11801.

3.     Defendant Federal Insurance Company ("Federal Insurance"), a surety

company duly authorized to engage in the suretyship business in the State of New York,

is a corporation organized and existing under the laws of the State of Indiana and has its

principal place of business located at 15 Mountain View Road, Warren, New Jersey

07061.

## JURISDICTION AND VENUE

4.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1) in

that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs,

and is between citizens of different States.

5.    Venue is proper in this Court pursuant to 28 U.S.C. 1391(a), in that a

substantial part of the property that is the subject of the action is situated in New York

County, as well as based on the agreements between the parties.

## NATURE OF ACTION

6.    This is an action for, inter alia, breach of four contracts and to recover

under a payment bond.

## FACTUAL ALLEGATIONS

7.    On or about September 18, 2003, defendant L & L Painting entered into a

contract with the City of New York, acting by the New York City Department of

Transportation, to perform work on the Queensboro Bridge known as Queenboro Bridge

2

Protective Coating together with all work incidental thereto, Boroughs of Queens and

Manhattan, Contract No. 20040013406 (DOT Project BRC-231P), PIN #

81499MBBR589, with a contract price of one hundred sixty-seven million seven hundred

fifty thousand ($167,750,000.00) Dollars ("the project").

8.    On or about October 1, 2003, pursuant to State Finance Law § 137,

defendant Federal Insurance, as surety, and L & L Painting, as principal, issued Payment

Bond No. 81925304 guaranteeing payment to all persons that performed labor, rendered

services or furnished materials or supplies to L & L Painting on the project.

9.    On or about March 3, 2004, Odyssey and L & L Painting entered into four

(4) separate subcontracts for Odyssey to perform certain paint removal and re-painting on

the project ("the subcontracts").

10.    The subcontracts each covered work on a different portion of the bridge

and divide the work that Odyssey was to perform on the project by panel points.

11.    In general, the subcontracts were to be performed sequentially.

12.    The subcontracts divide the work into the following panel point groupings:

(a) Subcontract I and IIA - panel points 77-123; (b) Subcontract IIB - panel points 30-47;

(c) Subcontract III - panel points 1-30; and (d) Subcontract IV - panel points 47-76.

12.    Odyssey substantially completed its work on Subcontract I and IIA.

13.    Odyssey substantially completed its work on Subcontract IIB.

14.    Odyssey substantially completed its work on Subcontract III.

15.    Odyssey performed work on Subcontract IV.

16. Odyssey was at all times in compliance with the subcontracts and provided the equipment, goods, labor and services required by the subcontracts on the project.

17. Despite due demand for payment, Odyssey has not been paid in full for its work on the project and L & L did not make payments to Odyssey in a timely manner.

18. Based on L & L Painting's failure to make payment to Odyssey and other breaches by L & L Painting, on April 1, 2008 Odyssey advised L & L Painting that Odyssey was terminating the subcontracts.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST L & L PAINTING

19. Plaintiff repeats, re-alleges, and reiterates each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

20. L & L Painting materially breached the subcontracts by, inter alia, failing to make payment to Odyssey for work pursuant to the subcontracts and extra work in an amount to be determined, but equal to at least of $6,250,000.00.

21. By reason of the foregoing, L & L Painting is liable to Odyssey in an amount to be determined, but equal to at least of $6,250,000.00.

## AS AND FOR A SECOND CAUSE OF ACION AGAINST L & L PAINTING

22. Plaintiff repeats, re-alleges, and reiterates each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

23. L & L Painting materially breached the subcontracts by, inter alia:

4

(a) failing to prepare proper and accurate standards, plans and designs and failing to obtain approvals from the owner for standards, plans and designs;

(b) failing to coordinate the work on the project and delaying Odyssey's work on the project;

(c) failing to approve or pay for extra work;

(d) interfering with the performance of Odyssey's work;

(e) failing to provide agreed upon and appropriate access to the work-site;

(f) failing to pay Odyssey for work performed;

(g) failing to return equipment and materials to Odyssey; and

(h) failing to deal with Odyssey fairly and in good faith.

24.    L & L Painting's actions, failures and/or omissions caused Odyssey to incur substantial increased costs in performing its work on the project.

25.    L & L Painting's actions, failures and/or omissions caused Odyssey to incur unnecessary additional costs in performing its work on the project.

26.    L & L Painting's actions, failures and/or omissions constituted material breaches of the subcontracts.

27.    L & L Painting's material breaches of the subcontracts have directly caused Odyssey to incur damages in an amount to be determined, but in excess of $12,500,000.00.

28.    By reason of the foregoing, L & L Painting is liable to Odyssey in an amount to be determined, but in excess of $12,500,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST L & L PAINTING

29.    Plaintiff repeats, re-alleges, and reiterates each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

30.    Odyssey provided work on the project for which it has not been paid by L & L Painting that has a fair and reasonable value of at least $6,250,000.00.

31.    There is currently an amount due Odyssey for its work on the project in the amount of at least $6,250,000.00.

32.    L & L Painting has received the benefit of Odyssey's work on the project without paying in full for Odyssey's work.

33.    By reason of the foregoing, L & L Painting is liable to Odyssey in the amount of at least $6,250,000.00.

## AS AND FOR A FOURTH CASUE OF ACTION AGAINST L & L PAINTING

34.    Plaintiff repeats, re-alleges, and reiterates each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

35.    L & L Painting represented to Odyssey that L & L Painting would pay for any union shop stewards that might be required and/or employed by Odyssey on the project.

36.    Odyssey reasonably relied upon L & L Painting's representation that L & L would pay for any union shop stewards that might be required and/or employed by

6

Odyssey on the project.

37.    L & L Painting has not paid for the union shop stewards that were required to be employed by Odyssey on the project, despite L & L Painting's representation that it would pay for any union shop stewards that might be required and/or employed under the subcontracts on the project.

38.    By reason of the foregoing, L & L Painting is liable to Odyssey in the amount of at least $971,000.00.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST L & L PAINTING

39.    Plaintiff repeats, re-alleges, and reiterates each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

40.    L & L Painting was obligated to protect the work on the project against damage from, inter alia, fire.

41.    On or about October 18, 2005, a fire on the project damaged work already performed by Odyssey thereby requiring Odyssey to redo the damaged work.

42.    The fire was caused by and/or allowed to spread as a result of L & L Painting's negligence in securing the project site against fires and taking the necessary and reasonable steps to extinguish and/or contain any fire that might occur.

43.    As a result of L & L Painting's negligence in securing the project site against fires and taking the necessary and reasonable steps to extinguish and/or contain any fire that might occur, Odyssey was required to redo work and sustained other damages in an amount to be determined but equal to at least $1,400,000.00.

7

44.    Based on the foregoing, L & L Painting is liable to Odyssey in an amount to be determined, but equal to at least $1,400,000.00.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST L & L PAINTING

45.    Plaintiff repeats, re-alleges, and reiterates each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

46.    L & L Painting breached the subcontracts by inter alia, withholding and/or misrepresenting plans and designs for the work in connection with the south outer roadway.

47.    As a result of L & L Painting's withholding and/or misrepresentation of the plans and designs for the work in connection with the south outer roadway, Odyssey was delayed and required to perform extra work not required under the subcontracts for which it has not been paid.

49.    Based on the foregoing, L & L Painting is liable to Odyssey in the amount of $2,473,450.00.

## AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST L & L PAINTING

50.    Plaintiff repeats, re-alleges, and reiterates each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

51.    L & L Painting materially breached the subcontracts by, inter alia, requiring Odyssey to obtain insurance coverage and/or coverage(s) not required by the

8

subcontracts.

52.    L & L Painting has not paid or otherwise compensated Odyssey for the additional insurance coverage that L & L Painting required Odyssey to obtain.

53.    The additional insurance coverage cost Odyssey approximately $110,000.00 to obtain.

54.    By reason of the foregoing, L & L Painting is liable to Odyssey in an amount to be determined at trial, but in the approximate amount of $110,000.00.

## AS AND FOR A EIGHTH CAUSE OF ACTION AGAINST L & L PAINTING and FEDERAL INSURANCE

55.    Plaintiff repeats, re-alleges, and reiterates each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

56.    Odyssey is a beneficiary of the payment bond issued by Federal Insurance, as surety, and L & L Painting, as principal, on the project.

57.    Odyssey has not been paid in full for its work on the project by L & L Painting.

58.    Pursuant to the terms of the above-mentioned payment bond, Federal Insurance and L & L Painting are liable to Odyssey in an amount to be determined but equal to at least $6,250,000.00.

59.    Based on the foregoing, Federal Insurance and L & L Painting are liable, jointly and severally, to Odyssey in an amount to be determined but equal to at least $6,250,000.00.

9

WHEREFORE, Plaintiff Odyssey Contracting Corp. demands judgment against defendants as follows:

(i)     On its First Cause of Action against L & L Painting Company, Inc., in an amount to be determined, but equal to at least of $6,250,000.00;

(ii)    On its Second Cause of Action against L & L Painting Company, Inc., for damages to be proven at the time of trial but believed to be in excess of $12,500,000.00;

(iii)   On its Third Cause of Action against L & L Painting Company, Inc., in an amount to be determined but equal to at least $6,250,000.00;

(iv)    On its Fourth Cause of Action against L & L Painting Company, Inc., in the amount of at least $971,000.00;

(v)     On its Fifth Cause of Action against L & L Painting Company, Inc., in an amount to be determined, but equal to at least $1,400,000.00;

(vi)    On its Sixth Cause of Action against L & L Painting Company, Inc., in the amount of $2,473,450.00;

(vii)   On its Seventh Cause of Action against L & L Painting, Inc., in an amount to be determined at trial, but in the approximate amount of $110,000.00;

(viii)  On its Eighth Cause of Action against L & L Painting Company, Inc. and Federal Insurance Company, in an amount to be determined, but equal to at least $6,250,000.00;

(ix)    And for such other and further relief as the Court deems just and fair under the circumstances including, but not limited to, attorneys fees, costs and disbursements.

10

## DEMAND FOR TRIAL BY JURY

Plaintiff Odyssey hereby demands a trial by jury.

Dated: New York, New York
       April 9, 2008

Michael McDermott
GEORGOULIS & ASSOCIATES, PLLC
Attorneys for the Plaintiff
45 Broadway, 14th Floor
New York, New York 10006
(212) 425-7854

u:\2008 cases\08-129\comp\20080409 complaint.doc

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x

ODYSSEY CONTRACTING CORP.,

Plaintiff,

against

L & L PAINTING COMPANY, INC. and
FEDERAL INSURANCE COMPANY,

Defendants,

----------------------------------------x

## COMPLAINT

### GEORGOULIS & ASSOCIATES, PLLC
45 Broadway, 14th Floor
New York, New York 10006
(212) 425-7854
Fax (212) 422-5360

To

Attorney(s) for

Service of a copy of the within
is hereby admitted

Dated,

Attorney(s) for

NOTICE OF ENTRY
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within named Court on                    20

NOTICE OF SETTLEMENT
that an order
of which the within is a true copy will be presented for settlement to the HON.
one of the judges of the within named Court, at
on the            day of            20.      at            M.

Dated,

Yours, etc.

GEORGOULIS & ASSOCIATES, PLLC
Attorneys for Plaintiff
45 Broadway, 14th Floor
New York, New York 10006

To Attorney(s) for

**EXHIBIT G**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 08 CV 3559

------------------------------------------------------------x

L & L PAINTING CO., INC.,

                        Plaintiff,

        - against -

ODYSSEY CONTRACTING CORP.,

                      Defendant.

------------------------------------------------------------x

NY County Index #
105126/08

NOTICE OF REMOVAL

APR 14 2008

U.S.D.C. S.D. N.Y.
CASHIERS

Defendant Odyssey Contracting Corp, by its attorneys, Georgoulis & Associates PLLC,
hereby removes the above-referenced action to the United States District Court for the Southern
District of New York. The grounds for removal are as follows:

      1.     Plaintiff L & L Painting Co., Inc. filed a Summons with Notice in the Supreme
Court of the State of New York, New York County, on April 9, 2008. A copy of said Summons
with Notice is annexed as Exhibit 1.

      2.     This is a diversity action between plaintiff, a New York corporation, and
defendant, a Pennsylvania corporation.

      3.     Removal is proper pursuant to 28 U.S.C. § 1441(a).

      4.     There is currently pending in this Court an action between plaintiff and defendant
concerning the same subject matter under Case # 08 Civ. 3491 entitled *Odyssey Contracting
Corp. v. L & L Painting Company, Inc. and Federal Insurance Company.*

      5.     Less than thirty days have elapsed since defendant first received a copy of the
Summons and Notice in this action.

DATED:     New York, New York
           April 14, 2008


                                    _____
                                    Michael McDermott
                                    GEORGOULIS & ASSOCIATES, PLLC
                                    Attorneys for Defendant
                                    45 Broadway, 14th Floor
                                    New York, New York 10006
                                    (212) 425-7854

TO:    New York County Clerk

       Thelen Reid Brown Raysman & Steiner LLP
       Attorneys for Plaintiff
       900 Third Avenue
       New York, New York 10022
       (212) 895-2000

u:\2008 cases\08-129\ntce\20080414 removal notice.doc

EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x
L & L PAINTING CO., INC.,

                            Plaintiff,

                -against-

ODYSSEY CONTRACTING CORP.,

                            Defendant.
-----------------------------------------------------------------x

Index No. 105726/2008

Date Purchased: 4/9/08

**SUMMONS WITH NOTICE**

**To The Above Named Defendant:**

      **YOU ARE HEREBY SUMMONED** to appear in this action and are required to serve a notice of appearance and/or a demand for the complaint on plaintiff's attorney within twenty days after the service of this summons, exclusive of the day of service, if this summons is personally delivered to you within the State of New York, or within thirty days after service is complete, if this summons is not personally delivered to you within the State of New York. Your time to appear may be extended as provided in subdivision (b) of CPLR 3012.

      **TAKE NOTICE THAT** this action seeks damages for breach of contract arising from a public improvement project known as the Repainting of the Queensboro Bridge, Boroughs of Manhattan and Queens, New York City Department Of Transportation Contract No. BRC231P (the "Project"), the said breach consisting, among other things, of defendant-subcontractor's wrongful termination and/or abandonment of work at the Project and breach and repudiation of its subcontract with plaintiff-contractor on or about April 1, 2008, as well as breaches by defendant of its subcontract other than the termination on or about April 1, 2008 as stated above

NYN #707849 v2                      1

The relief sought is a judgment in favor of plaintiff in an amount not yet determined and to be determined at trial, but presently estimated as not less than $3,000,000.00, together with interest and all other just and proper relief including without limit the costs and fees of the action.

Plaintiff designates New York County as the place of trial. The basis of the venue designated is contractual; defendant's residence.

Dated: New York, New York
      April 9, 2008

> **THELEN REID BROWN**
> **RAYSMAN & STEINER LLP**
> Attorneys for Plaintiff
> L & L Painting Co., Inc.
>
> By: _Jose A. Aquino_
>      Jose A. Aquino
>
>      900 Third Avenue
>      New York, New York 10022
>      (212) 895-2000

**DEFENDANT'S ADDRESS:**

ODYSSEY CONTRACTING CORP.
C/O C T Corporation System
1633 Broadway
New York, New York 10019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
L & L PAINTING CO., INC.,

*Index # 105126/08*

                Plaintiff,

        -against-

ODYSSEY CONTRACTING CORP.,

*AFFIDAVIT OF
SERVICE*

                Defendants.
-------------------------------------------------------------------X

    I, the undersigned, being sworn, say: I am not a party to the action, am over 18 years of age and reside in Astoria, New York. On April 14, 2008 I served the within *NOTICE OF REMOVAL*, by mailing a copy to each of the following persons by First Class Mail at the last known address set forth after each name.

TO:    Thelen Reid Brown Raysman & Steiner LLP
        900 Third Avenue
        New York, NY 10022

                        ANASTASIA GEORGOULIS

Sworn to before me this
14th Day of April, 2008.

NOTARY PUBLIC
GEORGE SITARAS
Notary Public, State of New York
No. 02SI6147110
Qualified in Suffolk County
Commission Expires May 30, 2010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x    Index No. 105126/08

L & L PAINTING CO., INC.,

                            Plaintiff

                against

ODYSSEY CONTRACTING CORP.,

                            Defendant.
--------------------------------------------------------------x

NOTICE OF REMOVAL

GEORGOULIS & ASSOCIATES, PLLC
45 Broadway, 14th Floor
New York, New York 10006
(212) 425-7854
Fax (212) 422-5360

To

Attorney(s) for

Service of a copy of the within
is hereby admitted

Dated:

                                          Attorney(s) for

NOTICE OF ENTRY
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within named Court on                    20

NOTICE OF SETTLEMENT
that an order
of which the within is a true copy will be presented for settlement to the HON
one of the judges of the within named Court, at
on the            day of            20        at            M.

Dated:

                            Yours, etc.

                            GEORGOULIS & ASSOCIATES, PLLC
                            Attorneys for Plaintiff
                            45 Broadway, 14th Floor
                            New York, New York 10006

To Attorney(s) for

# EXHIBIT H

**Section 4-09**     **RESOLUTION OF DISPUTES ARISING OUT OF CONTRACT ADMINISTRATION.**

(a)     Applicability. This section shall apply to disputes between the City and a vendor that arise under, or by virtue of, a contract between them. All contracts shall include a clause providing that all disputes of the kind delineated herein shall be finally resolved in accordance with the provisions of this section. Parties to contracts that do not contain this clause may by written agreement consent to the resolution of any disputes pursuant to this section.

(1)     This section shall not apply to disputes concerning matters dealt with in other sections of these Rules or to disputes involving patents, copyrights, trademarks, or trade secrets (as interpreted by the courts of New York State) relating to proprietary rights in computer software.

(2)     For construction, this section shall apply only to disputes about the scope of work delineated by the contract, the interpretation of contract documents, the amount to be paid for extra work or disputed work performed in connection with the contract, the conformity of the vendor's work to the contract, and the acceptability and quality of the vendor's work; such disputes arise when the Engineer, Resident Engineer, Engineering Audit Officer, or other designee of the Agency Head under the contract (as defined in the contract) makes a determination with which the vendor disagrees.

(b)     General Provisions. All determinations required by this section shall be clearly stated, with a reasoned explanation for the determination based on the information and evidence presented to the party making the determination. Failure to make such determination within the time required by this section shall be deemed a non-determination without prejudice that will allow application to the next level.

(c)     Work to Continue. During such time as any dispute is being presented, heard, and considered pursuant to this section, the contract terms shall remain in force and work shall continue as directed by the ACCO or Engineer. Failure of the vendor to continue the work as directed shall constitute a waiver by the vendor of its claim.

(d)     Presentation of Dispute to Agency Head.

(1)     Notice of Dispute and Agency Response. The vendor shall present its dispute in writing ("Notice of Dispute") to the Agency Head within the time specified by the contract or, if no time is specified, within thirty days of receiving written notice of the determination or action that is the subject of the dispute. This notice requirement shall not be read to replace any other notice requirements contained in the contract. The Notice of Dispute shall include all the facts, evidence, documents, or other basis upon which the vendor relies in support of its position, as well as a detailed computation demonstrating how any amount of money claimed by the vendor in the dispute was arrived at. Within thirty days after receipt of the complete Notice of Dispute, the ACCO or, in the case of

CHAPTER FOUR                                                                 § 4-09

construction, the Engineer, Resident Engineer, Engineering Audit Officer, or designee of the Agency Head under the contract, as applicable, shall submit to the Agency Head all materials he or she deems pertinent to the dispute. Following initial submissions to the Agency Head, either party may demand of the other the production of any document or other material the demanding party believes may be relevant to the dispute. The requested party shall produce all relevant materials that are not otherwise protected by a legal privilege recognized by the courts of New York State. Any question of relevancy shall be determined by the Agency Head whose decision shall be final. Willful failure of the vendor to produce any requested material whose relevancy the vendor has not disputed, or whose relevancy has been affirmatively determined, shall constitute a waiver by the vendor of its claim.

(2)    Agency Head Inquiry. The Agency Head shall examine the material and may, in his or her discretion, convene an informal conference with the vendor and the ACCO and, in the case of construction, the Engineer, Resident Engineer, Engineering Audit Officer, or designee of the Agency Head under the contract, as applicable, to resolve the issue by mutual consent prior to reaching a determination. The Agency Head may seek such technical or other expertise as he or she shall deem appropriate, including the use of neutral mediators, and require any such additional material from either or both parties as he or she deems fit. The Agency Head's ability to render, and the effect of, a decision hereunder shall not be impaired by any negotiations in connection with the dispute presented, whether or not the Agency Head participated therein. The Agency Head may or, at the request of any party to the dispute, shall compel the participation of any other vendor with a contract related to that of the party presenting the dispute, and that vendor shall be bound by the decision of the Agency Head. Any vendor thus brought into the dispute resolution proceeding shall have the same rights and obligations under this section as the vendor initiating the dispute.

(3)    Agency Head Determination. Within thirty days after the receipt of all materials and information, or such longer time as may be agreed to by the parties, the Agency Head shall make his or her determination and shall deliver or send a copy of such determination to the vendor and ACCO and, in the case of construction, the Engineer, Resident Engineer, Engineering Audit Officer, or designee of the Agency Head under the contract, as applicable,  together with a statement concerning how the decision may be appealed.

(4)    Finality of Agency Head Decision. The Agency Head's decision shall be final and binding on all parties, unless presented to the CDRB pursuant to this section. The City may not take a petition to the CDRB. However, should the vendor take such a petition, the City may seek, and the CDRB may render, a determination less favorable to the vendor and more favorable to the City than the decision of the Agency Head.

CHAPTER FOUR                                                                § 4-09

(e)     <u>Presentation of Dispute to the Comptroller</u>.  Before any dispute may be brought by the vendor to the CDRB, the vendor must first present its claim to the Comptroller for his or her review, investigation, and possible adjustment.

(1)     <u>Time, Form, and Content of Notice</u>.  Within thirty days of receipt of a decision by the Agency Head, the vendor shall submit to the Comptroller and to the Agency Head a Notice of Claim regarding its dispute with the agency.  The Notice of Claim shall consist of (i) a brief statement of the substance of the dispute; the amount of money, if any, claimed; and the reason(s) the vendor contends the dispute was wrongly decided by the Agency Head; (ii) a copy of the decision of the Agency Head; and (iii) a copy of all materials submitted by the vendor to the agency, including the Notice of Dispute.  The vendor may not present to the Comptroller any material not presented to the Agency Head, except at the request of the Comptroller.

(2)     <u>Agency Response</u>.  Within thirty days of receipt of the Notice of Claim, the agency shall make available to the Comptroller a copy of all material submitted by the agency to the Agency Head in connection with the dispute.  The agency may not present to the Comptroller any material not presented to the Agency Head except at the request of the Comptroller.

(3)     <u>Comptroller Investigation</u>.  The Comptroller may investigate the claim in dispute and, in the course of such investigation, may exercise all powers provided in Sections 7-201 and 7-203 of the New York City Administrative Code.  In addition, the Comptroller may demand of either party, and such party shall provide, whatever additional material the Comptroller deems pertinent to the claim, including original business records of the vendor.  Willful failure of the vendor to produce within fifteen days any material requested by the Comptroller shall constitute a waiver by the vendor of its claim.  The Comptroller may also schedule an informal conference to be attended by the vendor, agency representatives, and any other personnel desired by the Comptroller.

(4)     <u>Opportunity of Comptroller to Compromise or Adjust Claim</u>.  The Comptroller shall have forty-five days from his or her receipt of all materials referred to in (e)(3) to investigate the disputed claim.  The period for investigation and compromise may be further extended by agreement between the vendor and the Comptroller, to a maximum of ninety days from the Comptroller's receipt of all materials.  The vendor may not present its petition to the CDRB until the period for investigation and compromise delineated in this section has expired.  In compromising or adjusting any claim hereunder, the Comptroller may not revise or disregard the terms of the contract between the parties.

(f)     <u>Contract Dispute Resolution Board</u>.  There shall be a Contract Dispute Resolution Board composed of:

CHAPTER FOUR                                                    § 4-09

(1)     the chief administrative law judge of OATH or his/her designated OATH administrative law judge, who shall act as chairperson, and may adopt operational procedures and issue such orders consistent with this section as may be necessary in the execution of the CDRB's functions, including, but not limited to, granting extensions of time to present or respond to submissions;

(2)     the CCPO or his/her designee; any designee shall have the requisite background to consider and resolve the merits of the dispute and shall not have participated personally and substantially in the particular matter that is the subject of the dispute or report to anyone who so participated; and

(3)     a person with appropriate expertise who is not an employee of the City. This person shall be selected by the presiding administrative law judge from a prequalified panel of individuals, established and administered by OATH, with appropriate background to act as decision-makers in a dispute. Such individuals may not have a contract or dispute with the City or be an officer or employee of any company or organization that does, or regularly represent persons, companies, or organizations having disputes with the City.

(g)     Petition to CDRB.  In the event the claim has not been settled or adjusted by the Comptroller within the period provided in this section, the vendor, within thirty days thereafter, may petition the CDRB to review the Agency Head determination.

(1)     Form and Content of Petition by Vendor.  The vendor shall present its dispute to the CDRB in the form of a Petition, which shall include (i) a brief statement of the substance of the dispute; the amount of money, if any, claimed; and the reason(s) the vendor contends that the dispute was wrongly decided by the Agency Head; (ii) a copy of the decision of the Agency Head; (iii) copies of all materials submitted by the vendor to the agency; (iv) a copy of the decision of the Comptroller, if any; and (v) copies of all correspondence with, and material submitted by the vendor to, the Comptroller's Office.  The vendor shall concurrently submit four complete sets of the Petition: one to the Corporation Counsel (Attn: Commercial and Real Estate Litigation Division), and three to the CDRB at OATH's offices, with proof of service on the Corporation Counsel.  In addition, the vendor shall submit a copy of the statement of the substance of the dispute, cited in (i) above, to both the Agency Head and the Comptroller.

(2)     Agency Response.  Within thirty days of receipt the Petition by the Corporation Counsel, the agency shall respond to the statement of the vendor and make available to the CDRB all material it submitted to the Agency Head and Comptroller.  Three complete copies of the agency response shall be submitted to the CDRB at OATH's offices and one to the vendor. Extensions of time for submittal of the agency response shall be given as necessary upon a showing of good cause or, upon the consent of the parties, for an initial period of up to thirty days.

CHAPTER FOUR                                                                 § 4-09

(3)    Further Proceedings.  The Board shall permit the vendor to present its case by submission of memoranda, briefs, and oral argument.  The Board shall also permit the agency to present its case in response to the vendor by submission of memoranda, briefs, and oral argument.  If requested by the Corporation Counsel, the Comptroller shall provide reasonable assistance in the preparation of the agency's case.  Neither the vendor nor the agency may support its case with any documentation or other material that was not considered by the Comptroller, unless requested by the CDRB.  The CDRB, in its discretion, may seek such technical or other expert advice as it shall deem appropriate and may seek, on it own or upon application of a party, any such additional material from any party as it deems fit. The CDRB, in its discretion, may combine more than one dispute between the parties for concurrent resolution.

(4)    CDRB Determination.  Within forty-five days of the conclusion of all submissions and oral arguments, the CDRB shall render a decision resolving the dispute.  In an unusually complex case, the CDRB may render its decision in a longer period of time, not to exceed ninety days, and shall so advise the parties at the commencement of this period.  The CDRB's decision must be consistent with the terms of the contract. Decisions of the CDRB shall only resolve matters before the CDRB and shall not have precedential effect with respect to matters not before the CDRB.

(5)    Notification of CDRB Decision.  The CDRB shall send a copy of its decision to the vendor, the ACCO, the Corporation Counsel, the Comptroller, the CCPO, the Office of Construction, the PPB, and, in the case of construction, the Engineer.  A decision in favor of the vendor shall be subject to the prompt payment provisions of these Rules.  The Required Payment Date shall be thirty days after the date the parties are formally notified of the CDRB's decision.

(6)    Finality of CDRB Decision.  The CDRB's decision shall be final and binding on all parties.  Any party may seek review of the CDRB's decision solely in the form of a challenge, filed within four months of the date of the CDRB's decision, in a court of competent jurisdiction of the State of New York, County of New York pursuant to Article 78 of the Civil Practice Law and Rules.  Such review by the court shall be limited to the question of whether or not the CDRB's decision was made in violation of lawful procedure, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion.  No evidence or information shall be introduced or relied upon in such proceeding that was not presented to the CDRB in accordance with this section.

(h)    Final Decision Not Impaired by Contract Termination.  Any termination, cancellation, or alleged breach of the contract prior to or during the pendency of any proceedings pursuant to this section shall not affect or impair the ability of the Agency Head or CDRB to make a binding and final decision pursuant to this section.

CHAPTER FOUR                                                                                          § 4-09

210